W. W. PAYNE, administrator, plaintiff in error, *vs.* JAMES ORMOND *et al.*, defendants in error.

(LOCHRANE, Chief Justice, did not preside in this case.)

1. Where an action of ejectment for a lot of land, by its number in the original State survey, had been pending against three persons as joint-tenants for several years before the adoption of the new rule of Court requiring the tenants in possession in actions of ejectment to admit themselves in possession before they will be permitted to defend, and after the case was referred to the jury the plaintiffs insisted on the rule, and two of the defendants disclaimed title to the west half of the lot sued for, but admitted themselves to be in possession of the other half :

*Held*, That it was not error in the Court to refuse to continue the cause on motion of the plaintiff, for the reason then first brought to the notice of the Court, that the other defendant was dead, and they desired to make his representatives parties to the suit.

It was too late to continue the whole case unless the knowledge of the death had just come to the plaintiffs. The disclaimer by the living defendants, presented as to them, only an issue as to the east half of the lot sued for, which was the only thing tried. The rights of the deceased defendant are not affected by the verdict.

2. On the trial of an action of ejectment, it was shown that a certain deed, purporting to be from the State's grantee, was lost or destroyed, and the interrogatories of a witnesss were offered, who swore that he had seen the deed ; that it, with the original grant, had been passed to him as part of the muniments of title, on his purchase of the land, about the years 1826–1830, from the brother-in-law of the assumed maker of it ; that he did not remember the witnesses, and that he thought he had sent the deed to DeKalb county for record, though he could not say it was recorded. It was in proof by other witnesses that the original grant had been in possession of the supposed maker of this deed in 1826, and not afterwards, though it was stated by a witness that the grantee had said that the grant was burned with his house. It was also in proof that, soon after 1826, the supposed maker of the lost deed ceased to give in the land for taxes with his other lands which he had previously regularly done each year since the drawing. It was also in proof that both the maker and grantee of the supposed deed were dead, and that the Court-house and records of DeKalb county had been destroyed by fire :

*Held,* That altogether, these circumstances were proper to go the jury as evidence worthy of consideration to show the genuineness of the deed, and to justify a charge of the Court, treating them as evidence upon that point.

3. Under the Act of 1856, when an adverse possession of lands has commenced in the lifetime of the claimant, the Statute of Limitations did not cease to run at his death (except as against his minor heirs, lunatics, *femes covert,* etc.) in favor of his estate, unless administration be taken out within four years from the death ; and if administration be delayed longer than this, the five years are not to be counted out in favor of the administrator.

4. When an action of ejectment is brought by an administrator, and the defendant sets up a title by prescription commencing before the death of the testator :

*Held,* That in this State, even in an action at law, under the plea of the general issue, the defendant may sustain his prescriptive title by showing that the deceased left no debts, and that his heirs-at-law were all of age at the death of the intestate. And this is especially true of the full age of the heirs, and the mere existence of debts is no evidence, without objection by the administrator.

5. Section 3670 of the Revised Code, requiring the Court to arrest the cause on the filing an issue of the forgery of a deed, and to try the issue thus tendered, applies only to registered deeds, and does not cover a cause where there is no registry and the party producing the deed takes upon himself to prove the execution thereof.

Ejectment. Continuance. Evidence. Limitation of Actions. Before Judge HOPKINS. Fulton Superior Court. October Term, 1870.

The material facts in the case are as follows : On the 17th of September, 1861, ejectment was brought for land lot number seventy-five, in the fourteenth district, formerly DeKalb, now of said county, upon the demise of Payne, as administrator of John McCranie, against William McNaught, James Ormond and John Lee, tenants in possession. The defendants pleaded not guilty, and the prescription of seven years adverse possession.

At the trial, McNaught and Ormond admitted that they were in possession of the east half of said lot, and had been ever since the suit was begun. Plaintiff's counsel moved to strike the pleas, because defendants did not admit themselves in possession of the whole lot when the suit was begun. They said that Lee had died pending the suit. The motion was overruled. Defendant's counsel proposed to enter, for McNaught and Ormand, a disclaimer of title to or interest in the west half of said lot, and this was allowed over plaintiff's objection. Plaintiff's counsel moved to continue the cause till Lee's representative could be made a party. This was refused. Plaintiff then showed that the lot was granted, by the State, to John McCranie in April, 1825 ; that he died, and Payne was duly constituted his administrator, on the 12th of September, 1866, and showed that, in 1861, McNaught and Ormand lived on part of said lot, and Lee west of them, and there rested his cause.

Defendants read the answers of Pulliam to interrogatories, in which he testified that in 1850 James Loyd claimed a part of said lot as his, and rented it to him ; that he remained on it for about two years ; that Loyd put an overseer on it, and Davis and Crews, Loyd's tenants, stayed on it till Loyd sold it to McNaught & Company, in 1856.

It was shown that the Court-house of DeKalb county was

Payne *vs.* Ormond *et al.*

burned in 1841 or 1842, and the record of deeds was destroyed. McNaught gave a detailed account of his searching in every quarter for the deeds, from McCranie to Laslie, from Laslie to Bethune, and from Bethune to Howard, and said he had failed to find either of them.

Daniel McCranie testified that the grantor of said lot was his father, John McCranie; that he saw him have the plat and grant in 1826, at his house, and that his house and eveything in it was burned up in the winter of 1826, and his father said the plat and grant were then burned up. John McCranie died in 1853, and, owing no debts, he owed none after 1846. His heirs were then all of age. He said Daniel Laslie was his uncle, and that he had heard that he was dead. It was shown that Nicholas Howard died in 1849, at Columbus, Georgia, his residence.

Defendant's counsel offered in evidence the answers of James Bethune to interrogatories, in which he testified as follows: He once saw a lot pointed out to him as said lot number seventy-five. He had the plat and grant of it and a deed to it from John McCranie to Daniel Laslie, and one from Laslie to witness, and he sold it to Nicholas Howard, with other lots. He did not remember the witnesses or dates to either of the deeds. He thought McCranie's to Laslie was made in 1826 or 1827, Laslie's to him between 1826 and 1830, and his to Howard in 1836 or 1837. He believed that he then gave Howard the said grant and deeds, and witness never saw them since. He believed that, about 1830, he sent them to DeKalb county for record, and thinks he got them back. Howard died, he thought, in 1847, at Columbus, Georgia, and he knew of no administration on his estate. Witness applied to Howard's son, the only member of the family residing in the county, for said deeds, and he said he did not have them. Witness made no other search for them. He said he got the deed from Laslie, of Telfair county, as a fee for defending him for hog stealing.

These answers were objected to, upon the ground that the

evidence was not competent in ejectment. The objection was overruled. Plaintiff then filed an affidavit that the deed from McCranie to Laslie was a forgery, and proposed to stop the cause, and have an issue as to its genuineness tried. This was refused, and Bethune's evidence was read to the jury. Defendants next put in evidence an exemplification of a proceeding to revive a dormant judgment in favor of the Insurance Bank of Columbus against said Howard, in Muscogee Superior Court, etc. Plaintiff's counsel objected, because it did not appear that the *sci. fa.* was served on Howard. The objection was overruled. It was revived in 1848. *Fi. fa.* issued in January, 1849, was levied in May, 1849, on defendants' interest in said lot number seventy-five, by Allen E. Johnson, deputy sheriff of DeKalb county. He sold the same, and paid proceeds of sale to plaintiff's attorney, as approved by said exemplification. The defendants then put in evidence a deed purporting to be made by Jones, sheriff of DeKalb county, pursuant to the sale under said levy, conveying said lot to said Johnson. It was made in August, 1849, and recorded in October, 1861. They then read in evidence a deed from said Johnson to James Loyd for the east half of said lot, made in August, 1849, and a deed from Loyd to said Ormond and McNaught for said east half, made the 11th of November, 1856.

They then read in evidence a certificate from the Comptroller General's office, showing the tax returns of John McCranie for 1826 and 1838, and each year between them and 1841 and 1845, from which it did not appear that he gave in said number seventy-five for taxes in either of said years, and a like one by which it appeared that Laslie gave in said lot in 1826, 1827, and 1828, and did not give it in in 1833, 1834, and 1835 ; and another showing that the books of Muscogee county were lost, except for 1845, and Nicholas Howard did not give in number seventy-five as his that year. On the question of possession, evidence was introduced showing that Bethune was here trying to sell said lot

in 1849, that Loyd and his tenant were in possession of part of said east half from 1853 till McNaught and Ormond bought it, and they had been in possession since. The details of improvements, etc., are unnecessary. The acts of ownership were such as mentioned in the requests to charge.

Plaintiff's counsel requested the Court to charge the jury as follows : "Cutting off timber, or fire-wood, or erecting a brick kiln and such like acts, is not such adverse possession as will create a statutory title to land.  The thing absolutely necessary to exist, to protect the defendant, under the plea of the Statute of Limitations, is, that the defendant must, either by himself or his tenants, go into the actual possession of the land, under claim of right, and continue in the actual and unbroken possession of the land for seven years continuously, preceding the commencement of the action by plaintiff for its recovery.  If different tenants, at different times, occupy lands, before a title by prescription can exist, there must be a privity between the tenants.  If there is an interval, however small it may be, between the going out of one tenant and the coming in of another, and no privity between them, then the possession would not be a continuous, unbroken possession.

" When a defendant pleads the Statute of Limitations to prevent the plaintiff's recovery, the *onus* is on the defendant to sustain his plea affirmatively.  If there be a doubt, a reasonable one, the jury must give the benefit of the doubt to the plaintiff.  The law will not permit a party to be deprived of a plain right upon a mere doubtful claim of another.

"The time accruing between the death of a person and representation on his estate, is not to be counted against his estate, provided such time does not exceed five years, but at the expiration of the five years the limitation commences. If the evidence shows there had not been seven years' adverse possession of the land in dispute, under written evidence of title, before the death of John McCranie, the plaintiff's in-

testate, then, at McCranie's death, the statute ceased to run, and remained suspended for five years, unless the estate was represented within that time. If five years elapsed after the death of plaintiff's intestate, and his estate was not represented, then, at the end of the five years, the statute commenced to run, and continued to run up to the commencement of the suit. In all cases where the right to sue is suspended by law, the time of such suspension is not to be computed."

The Court refused so to charge, but charged the jury as follows: " This suit is proceeding by the plaintiff, as administrator of John McCranie, to recover the east half of land, lot number seventy-five, fourteenth district, Fulton county. If the plaintiff shows to you a copy of a grant from the State to his intestate, John McCranie, for this lot of land, that makes a *prima facie* case in his favor, and if there be no valid defense to the action, would entitle him to recover. It is said for the defense, that John McCranie parted with the title to this land. If the title passed out of him during his lifetime, his administrator cannot maintain this suit. (If the title was not in him, at his death, it matters not who had it; his administrator cannot recover.) It is said that John McCranie conveyed the land to one Laslie, and that the deed is lost or destroyed. You will look to the testimony and see whether there was in existence a paper purporting to be a deed of conveyance for this land from John McCranie to Laslie. If you should be satisfied that there was, then you will ascertain from the proof whether it was a genuine, original deed. To ascertain that, you may look to all the testimony in the cause. If the testimony should satisfy you that there was in existence such a deed; that it was a genuine, original deed, made and delivered by John McCranie, and conveyed his title to Laslie, and has since been lost or destroyed, your verdict will be for the defendants. But if the proof should fail to satisfy you that John McCranie sold and conveyed the land by deed, you will pass to another branch of the defense.

" When a defendant pleads the Statute of Limitations to prevent a recovery in ejectment, the *onus* is on the defendant to sustain his plea. If there be a reasonable doubt as to that matter, the jury must give the benefit of the doubt to the plaintiff, for the law will not permit a party to be deprived of a plain right, in a case where a plain right exists upon a doubtful claim. Whether this is a plain or doubtful case, on either side, the Court expresses no opinion. To make the Statute of Limitations available, as a defense, or to create a prescriptive right, the defendants, or those under whom they claim, by themselves, or their agents or tenants, must have gone into actual possession of the land, claiming the right under some written evidence of title, that served to define his claim and to have continued peaceably, openly, notoriously and visibly, in the actual and unbroken possession of the land for seven years, continuously, preceding the commencement of the suit. The use and occupation of the land must be so notorious as to attract the attention of any adverse claimant, and so exclusive as to prevent actual occupation by another. The color of title need not be a perfect deed. It matters not how imperfect and defective the writing may be, as a deed, if it is in writing and defines the extent of the claim. It is a sign, a semblance or color of title. If it be a forged paper, or be fraudulent, and the person claiming title have notice of the fraud, it would not be a sufficient color of title. If you should find that the defendants, and those under whom they claim, had good color of title to the east half of the lot sued for, and they had such actual possession, as I have described, of a part of the east half, the law would construe their possession to extend to the whole of the east half. A deed, made by a sheriff to his deputy, to land sold by the sheriff at public sale, is not necessarily a fraudulent deed within this rule. If different tenants, at different times, occupy land before a title by prescription can exist, there must be a privity between the tenants, they must claim under the same title. If there is an interval, however

small, between the going out of one tenant and the coming in of another, and no privity between them, the possession would not be a continuous, unbroken possession. On the other hand, if different tenants, at different times, occupy land, all claiming under the same title, and if there should be a succession of crops made on the land every year, the interval which necessarily elapses between the time of one tenant moving off, and another moving on the premises, will not work a forfeiture of the benefit of the Statute of Limitations, or break the continuity of an adverse possession. If such color of title and possession, as I have described, existed, your verdict would be for the defendants.

"If it should appear to you, from the testimony, that John McCranie was the owner of this land, and that the defendants, or those under whom they held and claimed, under written evidence of title, took actual possession of the land, and openly and notoriously and visibly, with the intention to claim title, withheld it from him, then a right of action existed in his favor, and if he failed to sue, and such adverse holding, as I have above described, existed, that right of action would be barred in seven years from the time it accrued. If, before the seven years expired, he died, and at his death, his children, or the representatives of his children, who were his heirs-at-law, were all of the age of twenty-one years, the statute would not be suspended by his death, but would continue to run against his heirs, and if they failed to sue before the expiration of seven years from the time when the right accrued to him, they, too, would be barred. If you should further find that there were no debts against John McCranie's estate, then the defendants can set up, in this case, the bar to the title of the heirs, to defeat whatever legal title the administrator may have. If you should find that the title of the heirs was barred at the commencement of this action, in the manner above shown, and that there were no debts against John McCranie's estate, your verdict will be for the defendants. By the law, as it existed at the date of these transac-

tions, if a person to whom the right to sue accrued in his lifetime, died before the suit was brought, the seven years time was not to be computed against his right from the time of his death until there was representation on his estate, provided there was representation by an administrator, duly qualified, within five years from the death.

"If, in this case, the testimony shows that there had not been seven years' adverse possession of the land in dispute, under written evidence of title, before the death of John Mc-Cranie, then the time cannot be computed against his right from the time of his death until there was representation on his estate, provided there was an administrator, duly qualified, within five years from his death. If there was no such administration within five years from his death, the entire time would be counted. It was the general rule that, when the statute had begun to run, death did not suspend it, and an exception, such as I have named, was made, by which it was suspended from the death until representation on the estate, provided there was an administrator, duly qualified, in five years. If you should find from the testimony that the statute had begun to run before McCranie's death, and should further find that there was no administration on his estate within five years from his death, the right of action would be barred, and the administrator could not maintain this suit. If the statute had not begun to run before his death, it would not begin to run when the right of action afterwards accrued, if administration was taken out within five years from the death, if not so taken out, it could. The Court expresses no opinion as to what has or has not been proven. The law refers the facts to you."

The jury returned a verdict for the defendants, whereupon counsel for plaintiff moved for a new trial, upon the following grounds: Because the Court erred in refusing to strike the pleas; in allowing McNaught and Ormond to disclaim title to the west half of the lot; in not continuing the case to have Lee's representative made a party; in admitting Beth-

une's evidence; in not arresting the cause to try the issue of forgery of the deed from McCranie to Laslie; in admitting the exemplification as to reviving the judgment against Howard; in admitting the certificates of the Comptroller General; in refusing to charge as requested, and in charging as he did. The Court refused a new trial, and error was assigned upon said grounds.

T. W. J. HILL; R. H. CLARK; COLLIER & HOYT; JOHN D. POPE. The Court should have *stopped, and tried* the issue of forgery: R. Code, sec. 2670; 40 Ga. R., 687. Bethune's evidence inadmissible, a deed have been produced, and its execution proven: 30 Ga. R., 391; 40th, 687; 7th, 356; 8th, 201; R. Code, secs. 3784-5-6-7. The Statute of Limitations ceased to run for five years after Mc-Cranie's death: 15 Ga. R., 361; R. Code, sec. 4; 16 Ga. R., 674; R. M. Charl. R., 537; Acts of 1855-6, p. 235; 1 Kelly, 380; R. Code, sec. 2877.

J. M. CALHOUN & SON; L. E. BLECKLEY, for defendants. Defendants may disclaim title and possession: R. Code, sec. 3285. As to proof of contents of lost deed: R. Code, secs. 3765, 3768. No *registered* deed was offered, no paper, and therefore there could be no issue as to forgery: R. Code, sec. 2670. Comptroller's certificates admissible: R. Code, secs. 100, 3763-4; 1 Gr. Ev., sec. 484; 32 Ga. R., 575, 577. As to limitations: R. Code, secs. 2877, 2646; 1 Kelly, 542. The charge was right: 23 Ga. R., 377; 20th, 515; 7th, 590; 21st, 436; 27th, 221; 30th, 77, 78.

McCAY, Judge..

1. This action had been pending for several years before the adoption of the New Rules. The defendants had filed their plea, and, as the rule stood at the time, they were in a proper condition to defend. At the October Term, 1870, the case was called, and both sides announced ready. The

plaintiffs moved to dismiss the plea, as the defendants did not admit the possession. This the defendants, McNaught and Ormond, could not, with truth, do, as they were only in possession of the east half of the lot. What were they to do? The rule is imperative. They did the only thing in their power; they disclaimed title to the one-half they were not in possession of. This, as *to them,* abandoned that half to the plaintiff, and, for all sensible purposes, put them in position to admit their possession of the other half, and to claim their right to defend it. There can be no doubt that, thus far, there was no error. It is absurd to say that a plaintiff can so bring his suit as to force a defendant to admit himself in possession of land he is not in possession of before he can be permitted to defend that which he actually does hold and claim the ownership of. But it is said that, admitting this, it was now the right of the plaintiffs, on a suggestion of the death of the other defendants, to continue the case, that his representatives might be made parties. So far as the claim of the plaintiffs against the living defendants was concerned, this was wholly useless. They set up no claim to more than the east half. As to *them,* the plaintiff may to-day take possession of the other half, and, so far as his rights to *mesne* profits of that half was concerned, the plaintiff could have his verdict against them for whatever he might prove they had received. The plaintiff knew of the death of the other defendant before he announced ready, at least it does not appear that he did not, and chose to go on because he had sued them as joint trespassers. By this he elected to put the case in *the hands of the living defendants.* They chose to disclaim any right in the west half. Why should the plaintiff complain? As the case stood, he went to trial, claiming the whole land of McNaught and Ormond. They, so far as they are concerned, yield to him the west half. Where is the harm? How is the plaintiff hurt? The real difficulty is, that he chose to go on, to insist upon it that McNaught and Ormond were withholding the whole

from him. For the purposes of the trial, then before the Court, he had practically discontinued his suit against Lee, the deceased. If he knew, when he went to trial, that Lee was dead, (and we must assume that he did, or his motion to continue would be put on the ground that the knowledge had just come to hand,) he elected to treat McNaught and Ormond as the sole tenants of the whole lot, and took the risk of having them disclaim title to the one-half. This would seem to be the legal result of his going on. We are not, however, disposed to hold him to this result, so far as the west half is concerned. It distinctly appears, from the record, that there was no trial as to this half, and it would be unfair to the plaintiffs to hold his case, as to. that half, concluded, so far as Lee is concerned.

2. We think there was no error in admitting the interrogatories of General Bethune. As evidence of the loss of the deeds from the drawer, from his grantee, and of the deed to Howard, and of the existence and genuineness of the latter two deeds, the evidence was clearly admissible. So far as Bethune's evidence refers to the McCranie deed, (save of its loss,) there is more doubt; but, taking this evidence with the other evidence, we think it admissible. Here was a deed said to be made in 1826, the grantor and grantee both dead, the deed lost, the Court-house and records of DeKalb county burned. That a deed, *purporting* to be a deed from McCranie, existed and was in possession of General Bethune, is clear. What are the circumstances showing its genuineness? It was proven that soon after the land was drawn by McCranie, he commenced giving it in for taxes with his other lands; that he continued this until about the date of this deed, when, though he gave in other lands, he ceased to give in this, and that, though he disposed of other lands and property to his children, he made no disposition to them of this; that he had the *grant* in his possession; that it, in fact, got out of his possession, and came *with this supposed deed* to Bethune's possession from the brother-in-law of McCranie.

Considering the time which has elapsed, we think these circumstances together are evidence going to show the deed genuine, and that it was proper to·submit them to the jury, and to charge upon them.

3. It cannot be concluded that, under the words of this Act, the statute stops, unless the letters are taken out in five years. This is expressly made the *condition* upon which this special privilege is granted, and, by the *terms* of the Act, an administrator must show that his letters were issued within five years after the death, before he comes within its provisvisions. But it is said that the evident intent of the Act is to *stop* the running of the Statute of Limitations five years, and that the *equity* of it is to count out the five years, no matter when the letters may be granted. We do not think so. The Statute of Limitations is a statute of repose, and is founded on a sound public policy. Exceptions to it ought not to be extended by the Courts. The honest resident on the land, who has, in good faith gone into possession, thinking his title was good, and who has continued, undisturbed, for seven years, in the notorious enjoyment of it, is entitled to be protected, unless the letter of the law be against him. Why should the administrator claim to have the law construed beyond its letter in his favor? As to infants, lunatics, etc., upon whom a right of action falls, the Act of 1817 stops the running of the statute. The administrator cannot, therefore, claim any equity for their sake, since they do not need his aid.

The adult heirs have no right, in equity, to shield themselves behind the administrator. No other persons are interested but creditors; they are *sui juris*, and have a *right* to administer immediately. In our judgment, the Act of 1856, stopping the statute for five years, in their favor, is as much as they have a right to ask. If they fail to take out letters in that time they do not come before the Court with that vigilance that entitles them to its power. It is a strong exercise of legislative indulgence to postpone, as against an

innocent claimant, the period when he can feel that time will protect him. We are not disposed to go further than the plain words of the Act indicate.

4. We concur with the Court below, that under our law the defendant may, even at law, reply to the defense, by which his prescriptive title is met in this case, that the heirs at law were all of age at the death of the intestate, and that he left no debts. That in equity, this would be a good reply is the settled rule. *Murdock vs. Mitchell,* 30 Georgia, 75. Why should it not be true, also, at law? It is admitted, that under our Code (section 3027) a defendant may set up, at law, any defense that would be good in equity, and this is clearly the rule in this State.

But it is said that the equitable defense set up at law must be distinctly set forth in the pleadings. This, as a general rule, is true. Our statute, Code, section 3400, requires that the defendant shall distinctly set forth his defense.

But what is this case? It is an action of ejectment. Does the plaintiff distinctly set forth *his* cause of action as the same law requires? Indeed, it is only because, by long usage, this action has been permitted by the Courts as an exception to the rule, that the plaintiff's writ is not liable to be dismissed for a failure to do this. The whole trial is upon a fiction. This, then, is not a fact in dispute between the parties that is set forth in the plaintiff's writ.

The defendant, before he is allowed to be heard, is compelled to come into Court, and admit every allegation in the writ. It would, as we think, be meeting out justice very unequally to permit the plaintiff to prove his case under the declaration, and deny to the defendant a right to set up his defense because he does not plainly and distinctly set it forth. His title in this case, as he claims, is seven years possession under paper claim of right. This, in Georgia, is a title. To this, the plaintiff replies: " The death of his intestate stops the running of the prescription." He does this without the setting forth of the matter in his declaration, or

in any way. Would it not be clinging very closely into the bark to say, " Oh, yes! the defendant may do this under our law; he may set up any defense at law thatᵃ he may, in equity, but he must plead it?" And this, in an action of the ejectment, and that, too, when the defense only comes in by way of a rejoinder, to the plaintiff's replication? If one may be, without a setting forth, we think it is but fair that the other shall be.

Judgment affirmed.