JONES *v.* RICE.

1. On the presumption that the common law prevails in North Carolina unaltered by statute as to the rights and powers of a married woman to charge her separate estate, a mortgage upon her land executed by her to secure the payment of a debt created for the

benefit of her husband, would be valid, it not appearing that there was any restriction upon her power of disposition imposed by the terms of any settlement or other conveyance under which her property was held. If, whilst her land was incumbered with such mortgage, she, desiring to exchange the same for other land, in order to facilitate this object, procured a stranger to advance money or property in part discharge of the mortgage lien and gave to him her promissory note for the amount, this note being executed and delivered in North Carolina, and afterwards she removed to the State of Georgia and here executed other promissory notes in renewal of the one so given in North Carolina, the renewal notes are not without consideration moving to her, but are valid and binding upon her separate estate here, their real consideration being the benefit which she derived from the advance made by the payee to disincumber her land in North Carolina.

2. There was no error in denying a new trial.

June 26, 1893.

Complaint on notes. Before Judge WELLBORN. Towns superior court. September term, 1892.

Rice sued Mrs. Jones on five promissory notes for $96.46 each, with interest, dated November 7, 1890, and due twelve months after date. They recite that the sum promised is part of the purchase money of certain lots of land in Towns county. The verdict was in the plaintiff's favor, and the defendant's motion for a new trial was overruled. Her plea, in addition to the general issue, was, that the notes were obtained by fraud and undue influence of the plaintiff and W. H. Jones, defendant's husband; that she never received any benefit therefor; that they are not for the purchase money of the land or any part thereof, but their consideration was and is a note and debt of her husband, which the plaintiff knew at and before their execution; that they were obtained by him and W. H. Jones in fraud of her rights, and are an attempted assumption of a debt due by her husband and not by her, which was known to plaintiff when he accepted them.

The testimony for the plaintiff is to the following effect: The defendant owned land in North Carolina,

on which she had given to McCloud and others a mortgage or deed of trust, signed by herself and her husband, W. H. Jones. She exchanged this land with one Henson for land in Towns county, Georgia, he paying $225 as the difference in value of the lands, which sum went toward the paying off of the mortgage, which had to be done before he could get title. The plaintiff advanced, for the same purpose, a note for $474 which McCloud owed him. These two amounts paid off the mortgage. The defendant thereupon gave the plaintiff her note in which she bound the Georgia land for what he had advanced, and it was agreed between them that if this note was not sufficient, she would give him a mortgage or any other kind of paper on the Georgia land, to secure him for what he had advanced. The note was signed by her voluntarily and cheerfully, she telling him that if this showing was not satisfactory, she would give him any kind of showing he wanted after she moved to Georgia. The plaintiff testified that W. H. Jones came to him and said he could not make the Henson trade unless he got help from some of his friends, and thereupon plaintiff agreed to help him in so far as the note against McCloud would go. Plaintiff gave this note to McCloud in Jones' presence, and McCloud said he would give Jones credit for it. Jones and plaintiff then went to Jones' house, and the next morning the defendant gave the plaintiff her note as above stated, thanking him kindly for his faithfulness as a friend, etc. After they came to Georgia they gave the five notes now in suit, in lieu of the first note given to plaintiff. The defendant signed them freely, after it had been explained to her that they were given for the same amount and in lieu of the old note. At this time plaintiff paid Jones $20 for boarding plaintiff's children, half in cash and the other half as a credit on the note. The plaintiff further testified: "They didn't

claim that I had not paid anything when they signed the new notes in Georgia. . . McCloud has never said anything to me about that note. The note paid by McCloud which I had against him was out of date, but he paid it cheerfully. . . I didn't see the note or papers McCloud had against Jones the day we were there. It was not my business. I didn't go there expecting to pay the papers off. I did not take up the Jones note from McCloud when I settled with him. I didn't go there to take it up, and didn't. I was not looking after any notes. I didn't know there were any notes. It was none of my business. I told Jones I would advance the amount of the McCloud note I held against McCloud, on the mortgage that McCloud and others held against him and his wife. I didn't take up the mortgage, and I don't know where it is. I didn't get any showing that I had paid McCloud. Mrs. Jones' notes is all the showing I have got for what I paid McCloud, and is all I want. . . I knew that O. R. Jones was to help relieve the land in North Carolina of any incumbrances; we were all there for that purpose. . ."

The defendant testified: The consideration of the notes in suit was, that the plaintiff was to lift a note which my husband had given McCloud for a lawyer fee. I did not owe McCloud anything. I do not know whether the plaintiff ever lifted the McCloud note. I never received any consideration for the notes I gave plaintiff. Henson paid me $225 difference between the lands in the trade. I am now living on the land I got from him. I signed the note to plaintiff in North Carolina, for four hundred and seventy odd dollars, at the solicitation of my friends who thought it was for the best. In ever got any money from plaintiff. I gave the notes (in suit) in lieu of the note I gave plaintiff in North Carolina. McCloud is dead. He never presented the note to me for payment, and I don't know whether

or not plaintiff ever paid it. The North Carolina land was mine. They made the trade and I approved, sanctioned and closed it, although somewhat unwillingly. There was force or harsh measures used to get me to make the trade. I suppose it is true that I could not trade with Henson until the mortgage on the North Carolina land was lifted. This mortgage was given for my husband's debts. I am not certain whether or not my husband signed it with me, but I don't think he did. There were three notes for lawyers' fees outstanding against him. I got no consideration for the notes I signed, or the mortgage. I do not know where the mortgage is now, or whether anybody has ever lifted it or not. I suppose there is a credit of $20 on the large note, which plaintiff lacked of paying my husband for boarding his children. He paid their board to my husband, not in my presence or with my consent.

O. R. Jones testified, that the mortgage in question was executed to secure three notes (put in evidence by defendant) for lawyers' fees, each for $366.66 with interest from date, September 2, 1885, one payable to Gudger, one to Carter, and the third to McCloud and Moore. They were signed by W. H. Jones. The witness further testified: These notes have been paid off and discharged principally by myself. I made a payment of $500 of my own money. I first lifted the two first notes by my own money, and money realized from the proceeds left by my brother. I paid the McCloud note myself, which was the last note. I paid the money to McCloud. It amounted then to $481 and a fraction. There are several credits of interest on this note, made while they were in bank. Neither Henson nor Rice ever paid anything on these three notes or on that mortgage. When I spoke of using the Henson money to help pay off the McCloud note, I meant the $225 that he paid as difference between the land traded to

him by defendant.  I was present when the big note was given by defendant to plaintiff in North Carolina. It was given in consideration of his lifting the McCloud note which McCloud held against her husband.  It was about one year ago that I paid off the McCloud note (September, 1891).  There was no mortgage on the land that my sister traded to Henson at the time she executed the note to plaintiff in North Carolina.  The mortgage had been cancelled.  Plaintiff never took up the McCloud note.  There was some agreement about it between him and McCloud, but it was never carried into effect.  Plaintiff never paid anything on the mortgage at all.  The notes which he has were given him by defendant with the understanding that he was to lift the note McCloud held against her husband with a note which he held against McCloud.  She knew before she left North Carolina that plaintiff had never lifted or paid the notes.  She signed this note (exhibited) in 1890, and gave four others after she came to Georgia, in lieu of it.  I lifted the McCloud note after this note was given.  Defendant never received any consideration for the note given in North Carolina, or these five either.

A. F. UNDERWOOD & SON and J. J. KIMSEY, for plaintiff in error.  W. S. PICKRELL, M. G. BLACKWELL and HOWARD THOMPSON, *contra.*

BLECKLEY, Chief Justice.

1. Nothing appearing to the contrary, we may presume that the common law prevails in the State of North Carolina unaltered by statute as to the rights and powers of a married woman to charge her separate estate.  The common law disabled her to charge herself personally by any contract for the payment of money.  No judgment against her could be recovered on such a contract; but she had capacity to charge her

separate estate by her contract, whether that estate received the benefit or consideration of the debt with which she incumbered it, or not. In order to charge it for anything which was not directly beneficial to it, it was necessary that she should manifest her intention so to do, and mortgaging or pledging her separate estate for the payment of the debt of another was a sufficient manifestation of such intention. That law did not disable her from binding her separate estate for the payment of her husband's debt. Prior to the adoption of the code she could in this State, if unrestrained by the instrument creating her separate estate, secure her husband's debt in this manner. *Carmichael* v. *Walters*, 33 *Ga.* 316. It was the code that attached this new disability to her former disabilities. No similar legislation by the State of North Carolina was proved on the trial of this case. We take it, therefore, that in that State a mortgage by a married woman to secure the debt of her husband would be valid and enforceable. In this case the jury could find from the evidence that Mrs. Jones had incumbered her land situate in North Carolina with such a mortgage, and, desiring to exchange the same for other land situate in this State, she procured Rice, the plaintiff below, to advance a promissory note which he held upon McCloud, the owner of the incumbrance, for that purpose, she giving Rice her promissory note for the amount so advanced; that she afterwards removed to this State and here executed other promissory notes in renewal of the first. If this was so, these renewal notes were not given for the debt of her husband, the real consideration of them being the benefit which she derived from the advance made by Rice to disincumber her land in North Carolina. This consideration moved to her and not to her husband. Of course, if it was lawful in North Carolina for her to incumber her property as security for her husband's debt, it was law-

ful for her to pay that debt, and if her separate estate was relieved from the incumbrance by the money or property which Rice advanced in North Carolina, that estate was benefited by the advance, and though the original note given in North Carolina might not have bound Mrs. Jones personally, yet the notes given here in renewal of that would bind her personally, for in the present state of our law a married woman may bind herself personally by promissory notes the consideration of which is a benefit to herself or to her separate estate. These notes were executed in November, 1890, and are the basis of the present action. The request on which Rice acted in advancing the McCloud note upon the mortgage was made by Jones and not directly by Mrs. Jones; but the jury could infer that her husband preferred the request for her interest and at her instance, inasmuch as she shortly thereafter gave to Rice her promissory note for the amount, and in that note, as Rice testified, bound the Georgia land for its payment, and agreed that if this mode of binding it was not sufficient, she would give a mortgage or any other kind of paper to accomplish the purpose. Rice parted with the McCloud note by surrendering it to McCloud according to the arrangement; and though it is contended that the amount of that note was not in fact deducted from McCloud's claim against Jones, but that that claim with others embraced in the incumbrance was paid off chiefly by another Jones, the brother of Mrs. Jones's husband, yet there are circumstances from which the jury might have inferred the contrary. And inasmuch as Rice advanced the McCloud note as he was requested to do, and Mrs. Jones recognized this advancement by giving her note for the amount, the jury might have concluded that it was her business to see to the application of the McCloud note, and not the business of Rice. Moreover they could conclude, from her executing, after coming

to Georgia, the notes in suit in renewal of her first note, that this was an admission on her part that she had obtained the benefit of Rice's advance. Some of the instructions complained of, in the charge of the court, are not accurate, but they were not calculated to mislead the jury as against Mrs. Jones on the real merits of the case. One or two of them may have been misleading as against Rice, the plaintiff.

2. The evidence was in some respects directly conflicting, and the verdict ought to have depended on whether the jury gave full credit to the testimony of Rice, the plaintiff. Doubtless they did so, for they found in his favor. Taking his testimony as true, and looking to the circumstances tending to support his theory of the case, the verdict was correct, and there was no error in denying a new trial.

*Judgment affirmed.*