SARGENT et al., trustees, v. BURDETT.

A person cannot by deed create out of his own property, upon his own behalf, a trust estate. A deed executed for such a purpose is void, and passes no interest, legal or equitable, to the trustees named. In such a case the whole title remains in the grantor, and the property so sought to be conveyed is subject to the payment of his debts.

April 15, 1895. Brought forward from the last term.

Levy and claim. Before Judge HARRIS. Coweta superior court. March term, 1894.

An execution in favor of A. R. Burdett against H. J. Sargent, founded upon a judgment of the city court of Newnan, dated November 27, 1893, for $475 principal, $134 interest, and costs, was levied on a lot of land in the city of Newnan, on which the Sargent residence is situated. A claim was interposed by George H., Joseph B. and Henry B. Sargent as trustees for H. J. Sargent. They relied upon a deed of conveyance from H. J. Sargent to them as trustees, dated December 9, 1888, embracing the property levied on and a number of other parcels of land in the same city and elsewhere. The

case was submitted to the judge without a jury; and he held that the property was subject.

The deed recites, that "Harrison J. Sargent, the party of the first part, is far advanced in life, being more than sixty-nine years old, and by reason of great bodily affliction has become much enfeebled physically, is now unable to manage, superintend and protect his estate"; that said estate "is valuable and of such character as to require and demand the constant attention, care and supervision of some active agent to preserve, protect and improve the same for the uses hereinafter created"; that there is no member of his immediate family qualified and suited to take charge of and manage the same successfully, and two of the parties of the second part are his brothers and the third his nephew, all being business men of experience in whom he has the greatest confidence and that he "desires to be relieved of all business cares and all worry attendant upon the superintendence of his estate, believing that perfect rest and quiet will aid his restoration to health." Therefore, in consideration of the premises and of $10 in hand paid, the party of the first part conveys the various described parcels of realty unto the parties of the second part in trust for the following uses: "First, that from the income, rents and profits of said property, the party of the first part the said Harrison J. Sargent, and his wife the said Sarah Sargent, are to be comfortably supported and cared for at such place or places as they may select; and should said income, rents and profits at any time prove insufficient to comfortably support, maintain and care for the said Harrison J. Sargent and his wife, then said parties of the second part may use for said purpose any of the corpus of said estate. This provision is to continue so long as either the party of the first part or his wife shall live; it being the purpose of this trust to provide for the comfortable support, maintenance and

care of the party of the first part and his wife, so long
as either may live.   Second, to convey said property, or
any part thereof, to such person or persons at any time
that the said Harrison J. Sargent, the party of the first
part, by the consent and advice of the parties of the
second part, direct.  Third, should said party of the first
part fail to direct the disposition of said property, as be-
fore provided, in his lifetime, and should he fail to dis-
pose of it by a will, the said parties of the second part
consenting thereto, then and in that event the parties of
the second part, if said Harrison J. Sargent should sur-
vive his wife and if she should survive him, then at her
death shall convey all of said property in such propor-
tion as they may in their discretion think best, to his
said children, or the children of said children, just as
they may, when the time arrives, all the circumstances
considered, deem best and most advantageous to those
who would, in their opinion, be most worthy objects of
the said Harrison J. Sargent's bounty.   Fourth, should
the party of the first part, the said Harrison J. Sargent,
recover his health and again become able to undertake
the management of his estate and should desire to do
so, the said trustees may, if in their judgment and dis-
cretion think advisable, reconvey any or all of said es-
tate herein conveyed, back to said Harrison J. Sargent,
and whatever shall be so conveyed shall become free of
the trusts and uses herein provided, and said trustees
shall be thereby relieved of any liability in reference
thereto, further than to account for their conduct and
acts while managing the same.   Fifth, that said prop-
erty shall be liable to reimburse said trustees for all
amounts and sums which they may be required to pay
towards securing said estate to the uses herein named;
the said parties of the second part being hereby author-
ized and empowered to pay all debts and claims against
said party of the first part, which are just and legal, and

defend any suits that may be pending or hereafter brought, when the same is deemed unjust and illegal. In order to fully carry out this trust and enable said parties of the second part to meet the requirements imposed in this deed, the said parties of the second part shall have full power and authority to sell, either publicly or privately, any or all of said property by this deed conveyed, and without obtaining the authority from any court so to do, and the proceeds to reinvest in any other kind of property anywhere, to the same uses and upon the same trusts. Said parties of the second part shall have full power to improve any of said property, and, to do so, to make any necessary changes therein as they may deem necessary, and all expenses thus incurred shall be borne by said estate. Said trustees, the parties of the second part, shall have full power and authority to employ agents, attorneys, etc., whenever deemed necessary in the execution of this trust. And all the powers, duties and authorities hereby invested and imposed upon said three trustees, the parties of the second part, may be exercised and performed by a majority, that is any two of them acting jointly; and in case either of them shall die, the survivors may fill the vacancy by the appointment of another person, which shall be evidenced by writing; and in case of the death of all of them, leaving the trusteeship vacant, then in that case the vacancy may be filled by said Harrison J. Sargent, the party of the first part, or any court having jurisdiction thereof, said Harrison J. Sargent failing to do so."

Upon the deed is a written acceptance of the trust, signed by the parties of the second part, and dated ten days after the date of the deed. It appears that the wife of H. J. Sargent has been dead for several years. He testified as follows:

I made deed of trust because of my feeble condition mentally and physically. I was confined to my room,

and had been for six or eight months, and was of opinion I would not recover. I felt and was unable to look after and manage my business, and have remained so since; and having complete confidence in the trustees, and knowing they were business men and much more able than myself to care for my interests, I confided the whole matter to them. I have not looked after or managed the trust property, except by direction of the trustees. I have given in property for taxes, but tax has been paid by trustees on draft for it. Trustees have not consulted me about renting some of the property. I now board with the tenant in the house levied on, who gives her notes for rental to trustees for monthly payments. Trustees furnish me with money when I wish it. The identical rent money does not come to me that I know of. Have sold none of trust property without consent of trustees, nor have I the right.

Joseph B. Sargent testified: I have looked after the matters of the trust estate since its creation to the present time, except for sixteen months when I was abroad. At the time H. J. Sargent signed the deed, he was in too feeble health to attend to his affairs, and I thought they should be attended to. I made much effort to learn all about them, particularly what was due him and what he owed. I personally made effort, as trustee or agent, to attend to these matters. I approached H. J. Sargent's neighbors, among them A. R. Burdett. The property of the Willcoxon Manufacturing Co. was sold in December, 1888. I have had exclusive management of the trust estate since its creation, except in my absence when George H. Sargent was in charge. I have occasionally asked H. J. Sargent to look after some minor matters connected with the estate, as to paying taxes and drawing on me for amount, and as to renting, etc. I have given in the property for tax usually. Latterly I have got my brother to do so. Draft is made on

me for taxes, which I pay. All the property tax is included in one sum. H. J. Sargent does not control the property deeded to the trustees, and he cannot sell any part of it. I bought the property of the Willcoxon Manufacturing Co., at sheriff's sale in December, 1888. I honor any draft made by H. J. Sargent on me, or allow him to retain any rents for his support and maintenance. The tenant first gave me her notes for rent of premises levied on; latterly H. J. Sargent collects and uses the rent. He has authority to draw on me for $50 per month, but he does not. I wish he would expend more for his comfort and maintenance.

Claimants sought to introduce evidence that the debt on which plaintiff's judgment was founded was not of the class to subject the trust property; that trustees had no notice of the suit; and that there was no foundation for said debt,—in fact no such debt ever existed—the whole of it was fraudulent and untrue. The court refused to receive this evidence, on the ground that the judgment could not be collaterally attacked.

W. A. TURNER, for plaintiff in error.

ATKINSON & HALL and A. D. FREEMAN, contra.

ATKINSON, Justice.

The official report states the facts. According to the record in this case, the defendant in execution, H. J. Sargent, being the owner of the property levied on, previous to the rendition of the judgment against him, conveyed the same by deed to the claimants, the same to be held by them as trustees, the incomes, rents and profits of the property to be applied to the support and maintenance of the grantor and his wife. The grantor was *sui juris*, in the full possession of his mental faculties, else he could not convey by deed at all; and the only reason assigned by him for the creation of this alleged trust in his own behalf was, in the language of the deed,

"that he is far advanced in life, being more than sixty-nine years old, and, by reason of great bodily affliction, has become much enfeebled *physically*, and is now unable to manage, superintend and protect his estate." The statute of uses was designed to discourage the practice of creating trusts, it being thereby declared to be the settled policy of the English law, accepted and incorporated by us in our system of jurisprudence, that the title to real property should follow the use; and therefore express trusts are the exception to the general rule and are capable of creation only in cases provided for by express statutory enactment.   Our code provides for the creation of trusts only in favor of certain specified classes of persons, viz: minors, persons *non compos mentis*, and such persons who, on account of mental weakness, intemperate habits, wasteful and profligate habits, are unfit to be put in the management and right of property. Since the passage of the woman's enabling act of 1866, though prior thereto it could be done, a trust cannot now be created in favor of a woman because of her sex alone, because, whether she be *feme sole* or *feme covert,* she is capable to take in law the absolute fee, free from the debts and control of her husband; and therefore inasmuch as a trust attempted to be created in favor of a woman, married or single, stands executed *eo instanti* with its creation, it is incapable of being created.   Upon this reasoning, it has been held in *Gray* v. *Obear*, 54 *Ga.* 231, that a trust estate cannot be created in property in this State for the sole benefit of a full grown man who is *sui juris*, and be conveyed to a trustee for the purpose of protecting it against his creditors, or for the purpose of depriving him of the free use and enjoyment of such property as the owner thereof.   This general statement is of course with the qualification, that if there be limitations over and restrictions in favor of other persons for whose use a trust is capable of being created, the

trust estate would be upheld. By section 2314 of the code, in case of an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title vests in the beneficiary, according to the terms and limitations of the trust. The words, "capable of taking and managing property," relate to the mental and not to the physical capacity; for whatever may be the physical condition of a *cestui que trust,* if he labor under no mental infirmity which prevents the management and control of his estate, a trust in favor of such a person is, nevertheless, executed. The section of the code (2306) which undertakes to define for what persons trust estates may be created, takes no account of physical infirmities. The only considerations which enter into the classification of those persons for whom trust estates may be created, are those which relate to mental, and not physical, disabilities; for instance, minors, and persons *non compos mentis,* and persons who, on account of mental weakness, intemperate habits, wasteful and profligate habits, are unfit to be entrusted with the control and management of property. For a person so situated and so constituted mentally, a guardian may be appointed for the preservation and protection of his estate. Such persons are deemed *non compos mentis* in so far as the same concerns the appointment of guardians for the management of their estates. See sections 1658 and 1852 of the code. And if necessary to the protection of their estates, they may have them placed in the hands of guardians. *Gray v. Obear, ex'r,* 59 *Ga.* 679. It will be observed that it is the mental imbecility, and not the physical weakness resulting from old age, rendering one incapable of managing his estate, which makes him subject to have a guardian appointed to take charge of and manage his estate. So it is the mental weakness, or that intem-

perance, wastefulness and profligacy of habit, which in-dicates the existence of an unsound, an unbalanced mind, and which exists to such an extent as to unfit one to be entrusted with the management and control of property, which enables him to be the subject of a trust. Unless these conditions exist, then he cannot be a *cestui que trust* under a trust estate created for his benefit alone upon the conveyance of a third person. If being already possessed of an estate as of his own right, holding the legal title and as well the beneficial use, it would seem a strange anomaly in the law which would enable the owner of the property to convey to trustees for his own use his own estate, with no limitations over in favor of third persons whose interests might in future attach. *Eo instanti* with the execution of such a conveyance, there would be a merger of the title with the beneficial interest. The legal effect of such an instrument would be to convey no title, legal or equitable, out of the grantor, but leave it where it was before the execution of the deed. In the case now under consideration, there is no suggestion of an impaired intellect by reason of advanced age as the inducement to the execution of this conveyance. A man in the full possession of all his intellectual faculties, simply undertakes to convey to trustees his own estate, to be held for his own use. Whether it be the original object designed to be accomplished by this trust deed or not, it appears in this case to have brought about one of the exact results intended to be defeated by the statute of uses, when it declared that trusts, of the character now under consideration, should stand instantly executed, and that was to prevent such a conveyance of one's property as would enable the alienee to hold it for the beneficial use of the grantor as against the creditors and free from the debts and con-tracts of the grantor. Inasmuch as the trust sought to be declared stands executed upon the instant of its crea-

tion, the deed is void and passes no title, legal or equitable, into the persons named as trustees. The jury having found the property subject, and the trial judge having denied a new trial, his *Judgment is affirmed.*