## HAGER v. NATIONAL GERMAN-AMERICAN BANK.

1. A married woman incapacitated by the law of the place of her domicil to bind herself by a promissory note can not be made liable on such a note because of the fact that, though executed at the place of her residence, it was made payable in another jurisdiction where she would be authorized by the law to make such a contract.

2. Knowledge by one of the officers of a bank, who participated in the acceptance for the bank of a negotiable note before due, of a fact which would put a prudent person upon inquiry as to the power of the maker to execute the paper, is sufficient to charge the bank with notice of a disability, if such existed.

3. Testimony of a witness, to the effect that the plaintiff's authorized agent knew the fact of the defendant's marriage "in a general way, no doubt," and that "I expect he got his information through me possibly," was inadmissible, and the court did not err in excluding such testimony as a mere conjecture of the witness.

4. This case was tried upon the theory that if the plaintiff was an innocent purchaser of the note sued on, the defendant, though a married woman who labored under a disability to make the contract, would not be allowed to set up such defense.  If notice of the defendant's disability was at all necessary to her defense, there was sufficient evidence in the record on the subject to require a submis-

sion of the issue to a jury. The court therefore erred in directing a verdict.

Submitted May 18, — Decided July 23, 1898.

Complaint on note. Before Judge Reid. City court of Atlanta. November term, 1897.

*N. J. & T. A. Hammond,* for plaintiff in error.

*B. F. Abbott,* contra.

COBB, J. The National German-American Bank of St. Paul, Minnesota, brought suit against Robert Hager and Belle Hager on a promissory note of which the following is a copy: " $3,731.82. St. Paul, June 4, 1888. On or before one year after date, we promise to pay to the order of F. D. Hager thirty-seven hundred and thirty-one and 82-100 dollars, at National German-American Bank, St. Paul, Minnesota, value received, with interest before and after maturity at the rate of eight per cent. per annum until paid. [Signed] Robert Hager, Belle Hager. [Indorsed] F. D. Hager." Robert Hager made no defense. Belle Hager pleaded that she was not indebted, because at the time the note was executed she was a married woman residing with her husband, the defendant Robert Hager, in the State of Tennessee, and the note was made in that State, and was not made for her benefit in any way, nor connected with any dealings as to her separate property. She then had no separate estate, has had none since, and is now a resident of the State of Georgia. Under the laws of Tennessee she had no capacity to make and bind herself by such a note, because of her then married condition and the facts above set forth, of all of which the plaintiff had notice before acquiring the note. At the trial the plaintiff offered in evidence the note sued on, and closed. The defendant Belle Hager then introduced evidence which she claimed tended to establish the truth of her pleas. The court directed the jury to return a verdict in favor of the plaintiff for the amount sued for. To this ruling the defendant Belle Hager excepted.

1. It was contended by the plaintiff, that the note purported to have been executed in the State of Minnesota, and that as it was payable in that State, the validity, force, and effect of the

contract was to be determined according to the laws of that State. On the other hand, it was contended by the defendant that the proof showed that the paper was actually executed in the State of Tennessee, of which State the defendant Belle Hager was at the time a resident, and that therefore the validity of the contract was to be determined according to the laws of that State. There was no evidence offered to show what was the law of the State of Minnesota in reference to the power of a married woman to bind herself by promissory note. We are therefore to presume that the rules of the common law prevail there. *Woodruff* v. *Saul,* 70 *Ga.* 271; *Jones* v. *Rice,* 92 *Ga.* 236. At common law a promissory note executed by a married woman was absolutely void. 1 Rand. Com. Paper, § 282, and cases cited. A married woman in the State of Tennessee is under the same disability to contract that she was at common law, except so far as that disability has been removed by statute. The only evidence before the court as to what was the law of Tennessee, on the subject of the right of a married woman to bind herself by promissory note, was a section of the code of that State, which reads as follows: "3345. Whenever a husband has been ascertained to be insane by the verdict of a jury in the manner prescribed by law, his wife may act as a single woman to purchase, receive, and hold property, real and personal; to contract and be contracted with; to sue and be sued; to plead and be impleaded; and such property as she may acquire, by purchase or otherwise, while so acting, shall not be taken or made subject to the satisfaction of the debts or contracts of the husband." There was evidence that Belle Hager was a married woman, that she was a mere surety on the note, that she had no separate estate, did not participate in the consideration of the note, and was not interested in its proceeds. Nothing appearing in the evidence to bring the case within the exception which the statute of Tennessee makes to the common-law rule, the note would be void, if the contract is to be controlled by the laws of that State. We have determined the question as to what the law of Tennessee is, solely from the statute which was offered in evidence and the presumption that, except so far as altered by that statute, the common law prevailed there. While no decisions of the Supreme Court of Ten-

nessee were in evidence, we have examined some of them as we would other authorities, and find that the conclusions reached by that court in reference to the question under consideration are identical with ours. See Sheppard v. Kindle, 3 Humph. 80, 81; Jackson v. Rutledge, 3 Lea, 626, 629; Lowry v. Naff, 4 Coldw. 370; McClure v. Harris, 7 Heisk. 379. It would seem, therefore, that whichever law controls on the question as to the validity of the promissory note it would be void. The common law being presumed to prevail in Minnesota, nothing to the contrary appearing in the record, the note, as above shown, is absolutely void under the law of that State. The common law being presumed to prevail in Tennessee, except so far as changed by the statute which was in evidence, and the exception in the statute not being broad enough to embrace a case like the one now under consideration, there was no liability on the note. However we are of the opinion that the capacity of the defendant to bind herself by a contract of the character under consideration is to be controlled by the laws of the State of Tennessee. She was domiciled in that State, and the note sued on was executed there. If a person having capacity to contract under the laws of the State of his domicil there executes a contract to be performed elsewhere, its validity and effect would generally be governed by the laws of the place where the contract was to be performed. We do not think, however, that the laws of the place of performance of a contract can be called to the aid of a person who is seeking to enforce as a contract something which is absolutely void at the place where it was executed. If the instrument was void as a contract in Tennessee, it is void everywhere. In the case of *Martin* v. *Johnson, 84 Ga.* 481, it was held, that while the general rule is that the rate of interest which a contract is to bear is to be determined by the law of the place where the contract is to be performed, still this rule had no application in cases where the entire contract was illegal at the place of its execution. In the opinion Justice Blandford cites the case of Andrews v. Pond, 13 Pet. 64, where a similar ruling was made. In that case a draft which was infected with usury was made in the State of New York and payable in the State of Alabama. Under the laws of New York the entire instrument

was void, while under the laws of Alabama the instrument
would be void only to the extent of the usury exacted.   It was
held that the contract was incapable of enforcement, as its valid-
ity was to be determined according to the laws of the State of
New York.   It was also held, that the general principle in re-
lation to contracts made at one place to be performed at another
was well settled, being that the laws of the place of performance
controlled, but that this principle had no application to a con-
tract void at the place of its execution, although intended to be
performed elsewhere.   See also Story, Conf. Laws (8th ed.),
§§ 242, 243; 2 Kent's Com. *458; Watson *v.* Orr, 3 Dev. Law,
161; Holmes *v.* Manning, 19 N. E. (Mass.) 25.   The defend-
ant, according to the laws of the State of Tennessee, being inca-
pacitated from making a contract of the nature sought to be en-
forced against her, the same is void, and, being void according
to the laws of the place of its execution, is, according to the au-
thorities above referred to, void everywhere.

2-4.   It was contended by the defendant, that there was evi-
dence sufficient to require the judge to submit to the jury the
question as to whether the bank had notice that Belle Hager was
a married woman at the time she signed the note and the bank
received it, and was therefore incapacitated to make the con-
tract contained in the note.   It was shown that F. D. Hager, a
brother of Robert Hager, was a customer of the bank, and that
notes amounting in the aggregate to a large sum had been dis-
counted for him prior to the transaction now in question.
Some of these notes matured on the 23d of June, 1888, and the
bank had insisted that he pay the same at maturity, and he had
requested that he be permitted to renew the same.   He had of-
fered to transfer and indorse to the bank, as collateral security
for his indebtedness then existing, the note which is sued on in
this case, as well as certain other paper.   The "officers of the
bank" accepted his proposition, permitted him to renew the
notes, and extended the time of payment; and he indorsed and
delivered the note now sued on to the bank.   F. D. Hager, who
was examined by interrogatories, was asked this question:
"What notice had Lockey [the cashier of the bank] of Mrs.
Belle Hager's being a married woman?"  The answer was:  "I

expect he got his information through me possibly; he knew in a general way, no doubt." This answer was ruled out. We do not see any error in this ruling. The statement made by the witness is nothing more than a conjecture on his part as to the possible knowledge of the cashier in regard to the matter which was under investigation. There was no other evidence offered to charge the cashier with notice that the defendant was a married woman, but there was evidence that the president of the bank knew the fact. While it may be, as a general rule, that the discounting of bills and notes is not within the scope and duty of the president of a bank, and therefore notice to him would not generally be notice to the bank in relation to such transactions, still where it appears, as it did in this case, that the "officers of the bank" consulted and acted upon the question as to whether a note should be accepted by the bank as collateral for an existing debt, notice to any of the officers who participated in the conference would be notice to the bank, and, in the absence of proof as to what officers were in such consultation, it might be inferred that the president and directors were those referred to. There being evidence that the president of the bank knew that Belle Hager was a married woman, and evidence that the "officers of the bank" consulted and acted on the question of the acceptance of the note by the bank, the jury should have been allowed to say whether this evidence was sufficient to show that the president took part in the consultation. If the jury were to find that the president was among the " officers of the bank " who consulted about the acceptance of the note and that he knew that Belle Hager was a married woman, this would charge the bank with notice of her disability to make the contract, and she would be let in to set up such disability as a defense to the note.

Whether such a note could be enforced in the hands of a bona fide purchaser for value before due, who had no notice that the maker was a married woman and consequently disabled from making the contract, will not now be decided. The case was argued here by counsel for both parties upon the assumption that if the bank acquired the note for value before due without notice that Belle Hager was a married woman, she would be precluded from setting up the defense contained in her plea. As

the question of the rights of an innocent purchaser in such a case was not referred to by counsel in any way, and as a new trial is necessary in any view of the case, we have seen proper to deal with the case in the manner in which it was presented to us and to decide it upon the theory upon which it was evidently tried in the court below, and leave it as an open question to be decided hereafter whether the bank had a right to maintain an action even if it be an innocent purchaser of the note. If the case had arisen under the law of this State, the right of a married woman to set up such a defense against an innocent purchaser of the paper would not have existed, but the law of this State is entirely different from the law of Tennessee. In this State the right of a married woman to make a contract is the general rule; her disability is the exception; and therefore, where the paper purports to contain a contract which a married woman would have a right to make, an innocent purchaser would be protected against a plea setting up the disability of the maker on account of the contract being within some of the exceptions provided for by law. And this would be true even though the holder knew at the time that he acquired the note that the maker was a married woman. If she purports to contract in a way that the law would authorize, and puts the note in circulation, a person purchasing such note would have a right to presume that she was contracting in a lawful instead of an unlawful way. In Tennessee, however, the rule is different. There the general rule is, that a married woman labors under a disability to contract, and contracts made by her are void, the common-law rule being of force in regard to such undertakings. There is a single exception to the rule which is referred to above, where the husband has been adjudged to be a lunatic. There is force, therefore, in the position that a person who was about to purchase a note signed by a female resident in the State of Tennessee would be bound to inquire, first, is the maker a married woman? and second, is the contract within the exception to the general rule of disability provided by law? However, we do not now decide this question.

*Judgment reversed.   All the Justices concurring.*