CLARK *et al. v.* BAKER, trustee, *et al.*

No. 12206.   APRIL 12, 1938.

*Schuyler W. Clark* and *Henry G. Howard,* for plaintiff in error.
*Hull, Barrett, Willingham & Towill,* contra.

GRICE, Justice. ■ Defendants in error predicate their right to the relief sought on the assumption that the trustees of Mrs. Frances Whetham Clark are invested with the same right given her, as a legatee and distributee of her husband, the testator, under the eighth item in his will, to wit, to have the executors furnish her, not oftener than twice each year, with an inventory and returns of their acts and doings. Plaintiffs in error do not in their brief make the contention that such a right to demand an inventory and returns of the executors is personal to Mrs. Clark and one that can not by Mrs. Clark be assigned, but that neither the plaintiff trustees, nor Eleanor F. Baker as an individual, had such a right by virtue of the instrument executed by Mrs. Clark. We ought not and will not pass on a theory not advanced. We shall accordingly not raise the question whether the right given her under the will to make reasonable demands of the executors to furnish her with inventory and returns is one which would, as an incident, in the nature of a right appurtenant, pass to whomsoever she conveyed her entire property, including her interest in her late husband's estate.

Mrs. Frances Whetham Clark, a person sui juris, granted by deed to Eleanor F. Baker and Elmer S. Mitchell, "for the purpose of preserving her property and estate for the support of herself," all of her personal and real estate. The instrument also contained a clause in the following words: "And upon the further trust to collect the rents, profits, interest, and income from my said estate and after deducting all proper charges to pay to me quarterly or oftener, at my written request, the said net rents, profits, interest, and income; and upon the further trust upon my decease to pay over the corpus of my estate to my niece, Eleanor F. Baker." The niece was also sui juris. The Code, § 108-112, declares that "In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title vests in the beneficiary according to the terms and limitations of the trust." The clause "capable of taking and managing property" relates to the mental and not to the physical capacity. *Sargent* v. *Burdett,* 96 *Ga.* 111, 118 (22 S. E. 667). If the instrument under consid-

eration violates the provision of our law, the effect is the same, although it was the plain intention of the settlor that the estate should vest and remain in the trustees named; for the intention of the citizen can not control express enactments of the legislature or positive rules of property. *Thompson* v. *Sanders,* 118 *Ga.* 928, 930 (45 S. E. 715). The Code section above referred to deals only with executed trusts. What was the character of this deed? "Trusts are either executed or executory. In the former, everything has been done by the trustee required to secure the property or to render certain the interest of the beneficiaries, and all that remains for him to do is to preserve the property and execute the beneficial purposes. In executory trusts, something remains to be done by the trustee, either to secure the property, to ascertain the objects of the trust, or to distribute according to a specified mode, or some other act, the doing of which requires him to retain the legal estate." Code, § 108-111. If this trust be an executory one, rather than executed, it must be because of the presence of these words, to wit, "and upon the further trust upon my decease to pay over the corpus of my said estate to my niece, Eleanor F. Baker." The court held in *Citizens & Southern National Bank* v. *Howell,* 186 *Ga.* 47 (196 S. E. 741), that a person could create out of his own property a valid trust estate for himself for life, provided the instrument also contained a valid remainder *in trust.* It is the trust in remainder that makes it necessary for the trustee to retain the legal estate, and thus to class the instrument as an executory rather than an executed trust. It was definitely ruled in *DeVaughn* v. *Hays,* 140 *Ga.* 208 (78 S. E. 844), that the mere fact that there is a legal remainder over will not suffice to uphold a trust for one sui juris. The question turns, therefore, on whether the words "and upon the further trust upon my decease to pay over the corpus of my said estate to my niece, Eleanor F. Baker," create a legal or an equitable remainder; or, to state it another way, was the remainder embraced within the trust?

The fact that the trustees had the power to sell any or all of the real estate did not itself give them the title to the fee in remainder. *Vernoy* v. *Robinson,* 133 *Ga.* 653, 661 (66 S. E. 928). We have seen that under the Code, for this to be an executory trust, something, after the termination of the life estate, remains to be done by the trustee, "either to secure the property, to ascertain the

objects of the trust, or to distribute according to a specified mode, or some other act, the doing of which requires him to retain the legal estate." If one or the other of these things remains to be done, the trust embraces the remainder. Otherwise the remainder is a legal one. In *DeVaughn* v. *McLeroy*, 82 *Ga.* 687, 696 (10 S. E. 211), a case frequently cited, Simmons, Justice, cited a number of cases dealing with executory trusts during the life-tenancy, and others after the life-tenancy, and he then observed: "In all of these cases the property was either given (1) to the executor, or trustee, *in trust* for the life-tenant, with remainder over, which are executory trusts during the life-tenancy; or (2) to the executor or trustee *in trust* for A for life, and after A's death *in trust* for B, which, in case of B's minority or other disability when the life-tenancy ceases, are denominated continuing or executory trusts after the life-tenant's death." (Italics his.) In the instant case, we have no remainder *in trust* for any one. (Italics ours.) Hill, Justice, in *Munford* v. *Peeples,* 152 *Ga.* 31, 46 (108 S. E. 454), in arguing against a contention that the trust there involved was created to protect the remainder, said: "The reply to this contention is that the trust is created *expressly* for the *plaintiff*. (Italics his.) No one else is named as cestui que trust in the will; and this fact throws much light on the question as to whether one of the purposes of the trust was the protection of the contingent remainder of Robert S. Munford." In the instant case the recital is that she conveys the property to the trustees "for the purpose of preserving her property and estate for the support of herself." Nowhere in the instrument is Eleanor F. Baker named or referred to as one of the cestuis que trust. This court in a number of cases has held, although the remaindermen were not named or referred to as cestuis que trust, that nevertheless the trust embraced the remainder estate in order for the trustee to ascertain who the remaindermen would be, and to divide the same among them when ascertained. Compare *Thomas* v. *Crawford,* 57 *Ga.* 211; *Cushman* v. *Coleman,* 92 *Ga.* 772 (19 S. E. 46) ; *Riggins* v. *Adair & McCarty Bros.,* 105 *Ga.* 727 (31 S. E. 743) ; *Jones* v. *Rountree,* 138 *Ga.* 757 (76 S. E. 55) ; *Wadley* v. *LeCato,* 139 *Ga.* 177 (77 S. E. 47) ; *Watts* v. *Boothe,* 148 *Ga.* 376 (96 S. E. 863) ; *Woodbury* v. *Atlas Realty Co.,* 148 *Ga.* 712 (98 S. E. 472) ; *Burton* v. *Patton,* 162 *Ga.* 610 (134 S. E. 603) ; *Macy* v. *Hays,* 163 *Ga.* 478 (136 S. E.

517). It is equally as firmly settled that merely because a trustee is named to protect the property during the life of a life-tenant, he does not become trustee for the remaindermen named to take the fee after the death of the life-tenant. Compare *Jordan* v. *Thornton,* 7 *Ga.* 517; *Carswell* v. *Lovett,* 80 *Ga.* 36 (4 S. E. 866); *Fleming* v. *Hughes,* 99 *Ga.* 444 (27 S. E. 791); *Allen* v. *Hughes,* 106 *Ga.* 775 (32 S. E. 927); *Brantley* v. *Porter,* 111 *Ga.* 886 (36 S. E. 970); *Tillman* v. *Banks,* 116 *Ga.* 250 (42 S. E. 517).

Counsel for defendants in error rely upon the language of this court in *Sinnott* v. *Moore,* 113 *Ga.* 908 (39 S. E. 415), that "a valid trust can be created in this State for the benefit of a person sui juris, for life, with remainder over in trust for another person sui juris, for life." In that case there was an ultimate remainder, and it was uncertain who would eventually take in remainder. In the decision it was said: "Under this item each son was to receive the income and profits of one of these equal one-third parts of the residue of the estate, not subject to his debts or to be disposed of by him, the receipts of the son alone to be a sufficient voucher for the trustees as to the disposition of the income and profits. In the case of each son this interest was given for life. If he died before the others, the income from his share was to go to the other two sons, and, upon the death of one of the latter, then to the survivor. Upon the death of all of the sons, the property was to go to the executors and trustees, with full power and direction to found and maintain such charitable or educational institutions as they might deem best, the institutions to be non-sectarian in their character." It will be observed that in the instant case there is no remainder over *in trust* for another person sui juris *for life.* Not having before us a case where a trust was created for a person sui juris, and also a remainder over in trust, the question is not here presented whether in order to uphold an instrument creating such a trust it is necessary that the trust in remainder should be for the benefit of a person for whose use a trust is capable of being created. It should be noted, however, that in *Sargent* v. *Burdett,* supra, Atkinson, Justice, after referring to the rule that a trust can not be created in property in this State for the sole benefit of a person sui juris, said: "This general statement is of course with the qualification, that if there be limitations over and restrictions in favor of other persons *for whose use a trust is capable of being created* [italics ours], the trust estate would be upheld."

The instrument here involved, in referring to the remainder, does use the words "upon the further trust," but this does not place upon the trustee any duty with reference to holding the remainder interest, or preserving it. It merely charged the trustees, upon the termination of the life-estate, "to pay over the corpus of my estate to my niece, Eleanor F. Baker." This court decided in *Baxter* v. *Wolfe*, 93 *Ga.* 334 (20 S. E. 325), in a devise to the testator's children for life, with contingent remainder to their children, a trustee being appointed "to hold the legal title during the estate for life and for the preservation of the remainder," the remainder created was a legal, not an equitable estate. If, though a trustee was appointed for the purpose in part "for the preservation of the remainder," it was ruled in effect that the trust ended with the life-estate, we do not think that it should be held that the words, "upon the further trust upon my decease to pay over the corpus of my estate to my niece, Eleanor F. Baker," make the remainder a trust estate, rather than a legal one. It is a rule of law that a trustee takes an estate as large and extended as the necessities of the trust require, and no more. Code, § 108-401. *Vernoy* v. *Robinson*, supra. Here, when the life-estate ceases, there remains no duty on his part to further secure the property, because the title then immediately passes to the niece; no duty to ascertain the objects of the trust, or to distribute according to a specified mode (Code, § 108-111), because the direction is specific that upon the decease of the life-tenant the corpus must be "paid over" to the named niece. We therefore reach the conclusion that the remainder is a legal remainder. The case of *May* v. *Trotti*, 153 *Ga.* 82 (111 S. E. 559), relied on by defendants in error, was not a full-bench decision, and may be distinguished on its facts. Since the instrument is insufficient under the laws of this State to create a trust as to the property in the hands of the executors, the trustees as such showed no right to the relief sought. If it be conceded that Eleanor F. Baker took a good legal estate in remainder, it does not follow that during the life of Mrs. Clark she, Miss Baker, had any right to ask for the filing of an inventory and return. So far as any legal claim in her is concerned, it is, if valid, only a remainder, after a reserved life-estate in Mrs. Clark, who in the circumstances and at least until her death would be the proper and only person to make such request as related to the share taken by her under the will.

74

Is the validity of the trust instrument to be determined by the laws of Pennsylvania or of Georgia? It does not describe any property, but we will not consider whether it is void for want of definiteness of description, counsel having made no such contention. It purported to convey to the grantees named all of her property, both real and personal. The trustees are attempting to assert a right, which we will assume was attempted to be conveyed to them, arising out of the will of the deceased husband of Mrs. Clark, i. e., the right to demand a full statement of the condition of the estate, in the hands of his executors. It affirmatively appears from the petition that Mrs. Clark owns real estate in the States of New Jersey and Pennsylvania, and an interest as legatee under her late husband's will, in property left by him. It also appears that at the time of his death her husband, Frank R. Clark, was a resident of Richmond County, Georgia, and that Frances W. Clark is his widow. So long as husband lived, her legal residence was at the latter place. There is nothing in the petition to indicate that she changed her residence. Therefore, according to the maxim that a fact once proved to exist is supposed to continue, we are obliged to presume that Mrs. Clark has not changed her residence. We have therefore this situation: A resident of Georgia, while temporarily sojourning in Pennsylvania, there executed and delivered to two citizens of Pennsylvania an instrument in writing, purporting to convey to them as trustees all her property, real and personal, consisting, in whole or in part, of real estate in New Jersey and in Pennsylvania, and her interest as a legatee under her late husband's will probated in Richmond County, Georgia, his estate now being in the hands of executors who are residents of Richmond County. In passing upon the question as to the validity or invalidity of the instrument, in so far as relates to property in Georgia, do we apply the law of Georgia, as insisted upon by counsel for plaintiffs in error, or that of Pennsylvania, as urged by counsel for defendants in error? The question is vital, because, if measured by the law of Pennsylvania, a different result will follow. Although no law of that State is pleaded, or mentioned in the petition, we are bound to conclude, in the absence of a contrary allegation, that the common law is in force there. *Selma, Rome & Dalton R. Co.* v. *Lacy,* 43 *Ga.* 461.; *Woodruff* v. *Saul,* 70 *Ga.* 271; *Jones* v. *Rice,* 92 *Ga.* 236 (18 S. E. 348) ; *Pat-*

*tillo* v. *Alexander*, 96 *Ga*. 60 (22 S. E. 646, 29 L. R. A. 616); *Lay* v. *Nashville, Chattanooga & St. Louis Ry. Co.*, 131 *Ga*. 345 (62 S. E. 189). And our State has certain restrictions on the right of a person to create a trust for a person sui juris, which are unknown to the common law. *Peoples National Bank* v. *Cleveland*, 117 *Ga*. 908, 917 (44 S. E. 20).

Plaintiffs seek to assert in the courts of Georgia rights under a written instrument which under the laws of this State is invalid. Under such circumstances, before they can prevail in the contention that its validity must be upheld because the instrument is valid under the laws of the State where executed, two things must affirmatively appear: First, that under the law of the State where executed, the instrument is valid. Second, that the law where the contract was executed is applicable, rather than the law of the forum. This burden has not been carried in the instant case. "In the recognition and enforcement of foreign laws the courts are slow to overrule the positive law of the forum." 11 Am. Jur. § 6. The deed, as stated elsewhere in this opinion, does not describe any property. It does appear, however, from the petition that Mrs. Clark owned real estate in New Jersey, real estate in Pennsylvania, and an interest as legatee in the estate of her husband who died a resident of this State. The petition carries the statement that she is a woman of substantial means; that she is entitled to a beneficial interest for life under the terms of a trust created by her father; and that she owns a substantial amount of stocks and bonds, the latter being in the physical custody of her brokers in Philadelphia. Counsel for defendants in error, laying to one side the fact that her interest as a legatee in her deceased husband's estate is only a part of the property covered by the instrument here involved, relies, first, on *Sterling* v. *Sims*, 72 *Ga*. 51, where it was held that the right of an heir at law to have her interest in the estate of her deceased ancestor, in the hands of his administrator, is a chose in action; and second, on the proposition that generally the validity of a trust of choses in action created by a settlement or other transaction inter vivos is determined by the law of the place where the transaction takes place. Restatement of the Law of Conflict of Laws, § 294. The instrument here involved, however, deals with property other than the settlor's interest in her late husband's estate. It will probably be admitted,

and there need be no extended citation of authorities to show, that generally the validity of a trust of realty is to be determined by the law of the situs of the land, and the legality of a trust of personalty by the law of the settlor's domicile. While laying down the rule as thus stated, Bogart in his work on Trusts and Trustees, vol. 1, § 211, adds that "there are many opportunities for complication and variation." Winslow, Chief Justice, in Northwestern Mutual Life Ins. Co. v. Adams, 155 Wis. 335, 337 (144 N. W. 1108, 52 L. R. A. (N. S.) 275), made this observation: "That field of law which goes by the name of the conflict of laws is one of the most thorny and difficult fields to traverse. It is full of conflicting decisions, refined reasoning, and unsatisfactory results. Especially is this the case when the subject under consideration is a mere chose in action."

It is axiomatic to say that no law has any effect of its own beyond the limits of the sovereignty from which its authority is derived. When the courts of one State give effect to the law of another State, they do so because of comity. "The enforcement of a foreign law and contracts dependent thereon for validity, within another jurisdiction, and by the courts of another nation, is not to be demanded as a matter of strict right. It is permitted, if at all, only from the comity which exists between states and nations. Every independent community must judge for itself how far this comity ought to extend." Magie, J., in Flagg v. Baldwin, 38 N. J. Eq. 219, 223 (48 Am. R. 308). The courts of this State may by comity enforce or refuse to enforce the laws of a sister State, dependent upon whether such laws, or rights sought to be upheld under them, contravene the settled policy of Georgia. *Bush v. Hessig-Ellis Drug Co.*, 10 *Ga. App.* 588, 591 (73 S. E. 1097). See also *Southern Express Co.* v. *Hanaw*, 134 *Ga.* 445, 453 (67 S. E. 944, 137 Am. St. R. 227); *Adams Express Co.* v. *Chamberlin-Johnson-Dubose Co.*, 138 *Ga.* 455 (2) (75 S. E. 601). In the cases last cited, this court held, that, although valid under the laws of New York where executed, a contract to make an arbitrary limitation upon the liability of a common carrier for its own negligence is unenforceable. In the *Hanaw* case Mr. Justice Lumpkin discussed the provision as to comity now appearing as section 102-110 of our Code, and what is now contained in section 20-504, to wit, "a contract which is against the policy of the law can not

be enforced." In *Gray* v. *Obear,* 54 *Ga.* 231, 235, in declining to uphold a trust created for the sole benefit of a person sui juris, Chief Justice Warner referred to a provision in a will which undertook to do the very thing undertaken to be done here, and said that it was contrary to the policy of the State.

The tendency to read exceptions into well-known principles of law, to restrict or extend a rule that has been followed for centuries, breeds uncertainty, and is not to be commended. Much of the confusion in this branch of the law would not, it is submitted, exist if the courts would merely follow the controlling principle and cease to create exceptions, followed by limitations on the exceptions, and then undertake to distinguish, and to refine the distinctions, and to distinguish the refinements; but instead to follow the course mapped out centuries ago, to wit, that as to contracts affecting realty the law of the State where the land lies will be applied, and to all kinds of personal property it is governed by the lex domicilii of the owner.

A chose in action is personalty. It is so defined by our Code, § 85-1801. Stocks are so classified. "Personal property has no locality other than that of the person having the same in possession, ownership, custody or control." *Molyneux* v. *Seymour,* 30 *Ga.* 440 (76 Am. D. 662). Mrs. Clark being a resident of Georgia, in connection with the other facts hereinbefore stated, we will not go beyond the law of this State to test the validity of the instrument under attack. It was error to overrule the general demurrer to the petition. All that took place thereafter was nugatory, and it is not necessary to pass upon the other assignments of error.                 *Judgment reversed. All the Justices concur.*