F. R. Dulany and L. H. Dulany, v. Commissioner.
Dulany v. Commissioner
Docket No. 2768.
United States Tax Court
1944 Tax Ct. Memo LEXIS 38; 3 T.C.M. (CCH) 1229; T.C.M. (RIA) 44376; November 23, 1944
*38 W. S. Connerat, Esq., for the petitioner. F. L. Van Haaften, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: This proceeding seeks a redetermination of deficiencies of petitioners' income tax for the years 1938, 1939, and 1940 in the sums of $167.54, $267.07, and $141.59, respectively. Petitioners concede an adjustment of $556.50 made in 1939 income relating to gain from the sale of property. The remaining question is the taxability to petitioners of the income from properties subject to an agreement between one of the petitioners and his father. The case is presented by a stipulation of facts and certain exhibits consisting of income tax returns for the years in question. The stipulated facts are found and these facts hereinafter appearing which are not from the stipulation are facts otherwise found from the record. [The Facts] Petitioners are husband and wife and legal residents of Savannah, Georgia, and the only issue in controversy relates to the income of F. R. Dulany, the husband, who will be hereinafter sometimes referred to as petitioner. On September 22, 1937, petitioner and his father, W. P. Dulany, "of the City of Philadelphia, Philadelphia County, *39 Pennsylvania," executed an agreement in which petitioner was designated "trustee" and his father "grantor." Under the terms of the agreement the father "conveyed" to the trustee personal property having a value of $26,800, and reserved the right to add other property. Included in the properties listed in the schedules of properties attached to the agreement were "notes of F. R. Dulany [petitioner], due 1938 and 1939 Face $11,000 and bearing 5% interest [$11,000.]" The agreement provided that the trustee should have full powers of management and control, including the powers of disposition, investment and reinvestment without limitation to legal investments "defined by the laws of the State of Georgia, or any other State." The trustee was given the power to enter into any agreements with reference to the trust corpus without order from any court. The trustee was relieved of giving bond or of making inventory or returns to any court but was required to make a semi-annual report to the grantor as to the investments of the trust estate or other information requested by the grantor. The agreement further provided: "Trustee shall pay to the Grantor, for and during his life, interest *40 at the rate of five (5) per cent per annum, payable quarterly, on the value of the Trust Estate * * * but shall not be required to pay interest on any accumulations or profits. "Upon the death of the Grantor this trust shall terminate and the corpus of the Trust Estate, and the accumulations and profits thereof shall thereupon become the property, unconditionally and in fee simple, of FRANKLIN R. DULANY, son and only child of the Grantor, in his individual capacity and not as Trustee. "If the said FRANKLIN R. DULANY should predecease the Grantor, then and in that event the trustees appointed under the will of the said FRANKLIN R. DULANY shall act as trustees hereunder and shall pay to the Grantor, for and during his entire life, the amounts herein stipulated to be paid, which shall be a charge upon the estate of the said FRANKLIN R. DULANY as long as the Grantor shall live. In such event the substituted Trustee shall furnish bond for the faithful performance of their duties and obligations to Grantor as set forth in this agreement. Upon Grantor's death the Trust Estate and the accumulations and profits thereof shall thereupon become a part of the estate of the said FRANKLIN R. DULANY, *41 and shall be held and administered by his executors and trustees as provided in his will." Petitioner as trustee further agreed with his father that he would pay him promptly; that he would keep the property subject to the agreement separate and apart from his individual property and plainly identified as the property subject to the agreement; that he would maintain a separate bank account for the funds involved and, upon request, furnish his father with an itemized statement of the investments and securities. The agreement also provided that in event of default by petitioner in the prompt payment to his father or failure in other respects under the terms of the agreement, the father, upon 30 days written notice, could discharge "the Trustee and appoint * * * a substituted Trustee." The instrument was executed by the father in Philadelphia, Pennsylvania, and by petitioner in Georgia. The father's tax returns for the years in question indicate his address then was St. Petersburg, Florida. At the time of the execution of the agreement and during the taxable years in question, and at all times subsequent thereto, petitioner had a wife and two minor children and had a will leaving *42 his property in trust for his wife and children. At all times since the execution of the agreement petitioner has been a legal resident of the State of Georgia and the properties covered by the agreement and all accretions thereto have remained in that state. For the years indicated the net income from the properties (and accretions thereto) was as follows: 1938
$1,975.07
1939
2,407.55
1940
1,609.57
In each of these years "petitioner paid to his father the sum of $1,340.00, representing 5 per cent of $26,800.00." Petitioner filed fiduciary income tax returns for the taxable years in question under the names of "William P. Dulany, Trust" and "W. P. Dulany, Trust," and reported therein the above-indicated amounts of income. In determining the net income subject to tax a deduction of $1,340 was claimed from the annual income above set out on account of the payments made to petitioner's father. Petitioner's father included for each of the years involved the sum of $1,340 thus paid him as part of his taxable income. At the time the agreement was executed and at all times subsequent both petitioner and his father, who in 1937 was 78 years old, were sui juris and could *43 be trusted with the rights and management of properties. Respondent included the entire income from the properties involved in petitioner's income, stating: "It is held that the income from the properties transferred to you under an agreement dated September 22, 1937, between you and your father, W. P. Dulany, is taxable to you under Section 22 (a) of the Internal Revenue Code. * * *" If the arrangement between petitioner and his father was in the nature of a trust, as distinguished from an outright transfer of assets in exchange for the stipulated annual payments, there is authority for considering those payments as ordinary income, rather than as annuities. Sallie Cosby Wright, 38 B.T.A. 746. Perhaps for this reason the parties have dwelt at great length upon the peculiarities of Georgia law in the field of executory and executed trusts in an effort to satisfy us as to whether the transfer resulted in a completed legal estate in the transferee, notwithstanding its superficial trust form. See e.g., Clark et al. v. Baker, Trustee, et al. (Ga.) 186 Ga. 65, 196 S.E. 750. But to our mind this controversy is beside the point and *44 furnishes no profitable method of resolving the present difficulty. For while the designated test might assist in determining the extent of the tax liability of the recipient of the annual payments, petitioner's father, it throws no light on the issue with which we are confronted. Rather we are inclined to agree with petitioner's statement that "It matters not whether this Court should construe the trust instrument as each party having a legal estate or whether it should be construed as an executory trust." Whether a strict trust or a conveyance of described freehold estates, the real problem is to ascertain what, if any, interest petitioner had in the current income from the property. If he had none, we think it impossible to conclude that any tax liability in respect of it rested upon him. A reading of the instrument convinces us that no part of the income from the transferred property belonged to petitioner. Not only is there no express provision which conferred upon him any right to the income during the grantor's lifetime, but what references there are to income satisfy us that after the stipulated payments had been made to the grantor the balance was designated for accumulation. *45 Thus, it is provided "Upon the death of the Grantor * * * the accumulations * * * shall thereupon become the property, unconditionally and in fee simple, of" petitioner in his individual capacity. If it were contemplated that current income was to be paid to petitioner rather than accumulated or if such income as was accumulated was considered his, the quoted language would have been unnecessary and in fact misleading. If he obtained title to the surplus income not distributed to his father only upon the death of the latter, it seems clear that he was not entitled to it currently during the periods in controversy and while the grantor was still alive. Hence, it advances us nothing to say that petitioner might have acquired an immediate freehold estate in remainder after termination of the grantor's life estate, and that the latter was also a legal rather than an equitable interest under the "executing" effect of the Georgia authorities already noted. If petitioner was not an income beneficiary under the trust, he would not acquire any greater interest in the income, considered as an immediate freehold estate, even under the Georgia law. There is no showing that the provision for *46 accumulation was unlawful, see Murphy v. Johnston (Ga.), 190 Ga. 23, 8 S.E.2d 23, but even if so the result would be a failure of disposition, and the grantor, not the remainderman, would retain its benefits. Murphy v. Johnston, supra.And even if the annual payments were in the nature of capital expenditures in exchange for the conveyance of the property by the father, as respondent contends, and even if their deduction by petitioner would consequently be prohibited, Robert Hoe Estate Co., 32 B.T.A. 903 [Dec. 9010], affirmed (C.C.A., 2nd Cir.), 85 F.2d 4, it does not follow that the effort of respondent to tax petitioner on the income of the property can succeed. No question of deduction is before us and in fact there is no indication that it was attempted. The only controversy is whether the income from the property can be taxed to petitioner and since, as we have seen, the income was not his, we see no ground for imposing the tax. Decision will be entered under Rule 50.