## CUSHMAN *et al. v.* COLEMAN.

1. Where the terms of a conveyance by deed to a trustee are large enough to embrace the fee in the premises described, and this fee is carved up into an estate for life in favor of one beneficiary and a remainder in behalf of other beneficiaries, who are uncertain and unascertained, the instrument should be construed as clothing the trustee with full title, and the title as to the remainder should be considered as abiding in him so long, at least, as the identical persons who are to take and enjoy it are not ascertainable. Up to that time, the trust is executory, and the remainder is an equitable, not a legal, estate. The trustee represents it, and should he become barred by prescription, the beneficiaries will be barred also. That a trust in remainder will become executed on the happening of a certain event, such as the death of a tenant for life, does not involve, as a presupposition, that the trustee has no title to the remainder, but the contrary; for the passing of the legal title out of the trustee into the beneficiaries is what executes and terminates the trust.

2. A deed conveying to a named trustee, "and his heirs forever in fee simple, in trust for the sole and separate use of" a married woman "during her natural life; and at her death, in trust to be equally divided between such children of her and her present husband as may be in life at her death, and the representatives of any one or more of said children, if any, as may have died before" her decease, passed the fee in the premises described to the trustee; and the persons who were to take in remainder being uncertain, and it not being ascertainable who they would be until the death of the life-tenant, the remainder was contingent, and could not become vested until her death.

3. If, under the terms of section 2688 of the code, the death of the trustee would suspend the running of the statute of prescription, provided his successor was appointed within five years, it would be incumbent on those claiming the benefit of such suspension to show such appointment.

4. It is discretionary with the presiding judge whether he will reopen a case for the reception of more testimony after the plaintiff has closed and a motion for a nonsuit has been made and argued.

5. While writings produced on notice and inspected will thereby be-
come evidence for the producing party without further proof, on
all trials of the same case, as ruled in *Wooten & Co.* v. *Nall*, 18 *Ga.*
609, this will not suffice on the trial of a subsequent case, though
brought for the same cause of action.
January 27, 1894.

Ejectment. Before Judge GUERRY. Bibb superior
court. November term, 1892.

H. F. STROHECKER and J. H. MARTIN, for plaintiffs.

ANDERSON & ANDERSON, for defendants.

LUMPKIN, Justice.

Mrs. Sarah C. Cushman and others brought an action
against Mrs. Aurelia A. Coleman, to recover certain
premises in the city of Macon. Mrs. Cushman died
after the action was brought, and her heirs were made
parties plaintiff in her stead. After the plaintiffs closed
their evidence, a nonsuit was granted on the ground
that the evidence did not warrant a recovery in their
favor, a perfect prescriptive title in the defendant having
been thereby shown. The bill of exceptions assigns as
erroneous certain rulings made during the trial, and
also the granting of the nonsuit.

It appears from the brief of evidence that from 1836
to May, 1842, Jerry Cowles was in possession of the
premises in dispute. On the first Tuesday in that
month, the sheriff of Bibb county, after levy and ad-
vertisement, sold the premises as the property of Jerry
Cowles, under certain *fi. fas.* against him. Seaton
Grantland became the purchaser, and rented the premises
to E. A. Nisbet, as trustee for Mrs. Sarah C. Cowles, until
June 6th, 1845, at which time Grantland conveyed the
property to Nisbet, as trustee, by a deed from which the
following is an extract:

" To have and to hold all of said bargained premises,
together with all and singular the improvements, rights,
members and appurtenances to the same in any wise ap-
pertaining, to him, the said Eugenius A. Nisbet, and his

heirs forever in fee simple, in trust for the sole and separate use of Mrs. Sarah C. Cowles, wife of said Jerry Cowles, during her natural life; and at her death, in trust to be equally divided between such children of her, said Sarah C. Cowles, and her present husband, Jerry Cowles, as may be in life at her death, and the representatives of any one or more of said children, if any, as may have died before the decease of her, the said Sarah C. Cowles; and the title to the said bargained premises, for the uses and trusts hereinbefore specified, I do hereby warrant and defend unto him, said Eugenius A. Nisbet, and his heirs forever, against the title and claim of myself, my heirs, executors and administrators."

It does not appear that Nisbet, as trustee, ever conveyed the property to any person; but the evidence shows that one Bond took possession of it in 1847, and occupied it openly, continuously, adversely, etc., until his death in the year 1859, and that his possession was succeeded by that of others who held in like manner down to, and including, Mrs. Coleman, the present occupant. All of these parties held and occupied the property under a claim of right. Nisbet died in 1871, and Mrs. Cowles died January 10, 1883, leaving only one child living, who was Mrs. Cushman. The plaintiffs below comprise all the descendants of the children of Sarah C. and Jerry Cowles.

1–2. We think that under the deed from Grantland to Nisbet, trustee, the fee passed to the latter. Certainly, no title was left in the grantor, and the terms of the deed are undoubtedly broad enough to embrace the entire fee in the premises. This fee is carved up into a life-estate for the benefit of Mrs. Cowles, with remainder over to such children of herself and of her then husband as might be in life at her death, and the representatives of any one or more of such children as might die before her decease. By its express terms, the deed makes Nisbet trustee, not only of the life-tenant, but of the remaindermen, the phrase, "and at her death, *in trust* to

be equally divided," etc., leaving this unequivocal. Un-
doubtedly, when the deed was executed, it was uncertain
who the remaindermen would be; nor was it possible to
ascertain who they would be until the death of Mrs.
Cowles, and therefore we think the remainder was con-
tingent. We have already seen that full title passed out
of Grantland; and the question is: where did it vest?
Certainly, in the trustee, so far as the life-estate of Mrs.
Cowles was concerned. The legal title in remainder
could not immediately vest in the remaindermen, for the
reason, just stated, that it was not, and could not be,
known at the time the deed was executed who they
would be. The legal fee should never be held to be in
abeyance except when necessary; and we therefore think
the proper construction of the deed before us requires us
to hold that it clothed the trustee with full title, and that
as to the remaindermen it should be considered as abid-
ing in him until, upon the death of the life-tenant, the
identical persons who were to take and enjoy the remain-
der could be definitely ascertained. Up to that time,
therefore, the trust was executory, and the remainder was
an equitable, and not a legal, estate. This view, in our
judgment, is perfectly consistent with good law and sound
common sense. So long as the trust was executory, the
trustee represented the entire trust estate and all the
beneficiaries, and it was his right to sue for and recover
the property from any and all persons who might be
unlawfully in possession of it. If he suffered a prescrip-
tive title to ripen against him and thus bar his right to
recover, it is well settled, by previous decisions of this
court, that the beneficiaries would be likewise barred.
That the trust in remainder would have become executed
upon the death of Mrs. Cowles, by no means involves,
as a presupposition, that the trustee had no title in re-
mainder, but the contrary; for the passing of the legal
title out of the trustee into the remaindermen is the very

thing which would execute the trust and cause the trust estate to terminate. If when the time arrived for the vesting of the legal title in the remaindermen, the trustee, in whom up to that time the legal title was vested, had already become barred by prescription, and had thus lost the legal title, it could not pass to the remaindermen, for it had gone out of the trustee, and therefore he had no title which could pass to those he represented.

We will not undertake to compare with the present case the large number of cases involving similar questions heretofore passed upon by this court. It is not improbable that some expressions to be found in previous opinions may not harmonize perfectly with all that is said in this opinion ; but we are not aware of any former decision of this court which necessarily, in any material particular, conflicts with what is here ruled. The truth is, that in construing wills and deeds, each case must, to a large extent, stand upon its own merits. The ever varying language used in instruments of this character causes each to differ in a greater or less degree from most others. Therefore, it would not, we think, be profitable to exhibit side by side the various cases, and endeavor to distinguish them from each other or from the case at bar. To do this satisfactorily would require more time and labor than we now have at our command, and after all, would, perhaps, result in no great amount of good. As to this particular case, we are satisfied we have ruled the true law ; and without further discussion concerning the nature and character of the deed from Grantland to Nisbet, trustee, we will now undertake to show that, applying the doctrines above announced to the facts, the plaintiffs were not entitled to recover.

They offered to amend their petition by alleging, in substance, that this action was a renewal of a former one between the same parties, and for the same property, which was begun October 7th, 1889, and resulted

in a nonsuit; that the judgment of nonsuit was taken
by bill of exceptions to the Supreme Court, and there
dismissed because not carried up in conformity with the
requirements of the act of November 11th, 1889; and
that the present action was brought within less than six
months after the dismissal of the writ of error by the
Supreme Court.  The court below rejected this amend-
ment; but it is immaterial whether so doing was erro-
neous or not.  Even if the case now pending had been
begun immediately upon the death of Mrs. Cowles,
which occurred January 10th, 1883, the plaintiffs would,
nevertheless, have been barred.  It has already been
stated that Nisbet, the trustee, died in 1871.  We will
treat the case, for the present, as if he were still living,
and in the next division of this opinion will undertake
to show that his death did not suspend the running of
the statute of prescription.

The defendant claims that she has a perfect title by
prescription for twenty years, under section 2682 of the
code.  The provisions of this section first became law
on January 1st, 1863, when the original code of this
State took effect.  (Code of 1863, §2641.)  We may,
for the purposes of this case, ignore any adverse posses-
sion of the property in dispute prior to the 1st day of
January, 1863.  Counting the prescription as running
in favor of the defendant and those under whom she
claims, only from the day last named, it will be seen
that to the 10th of January, 1883, was more than twenty
years, so that, if Nisbet was still in life and occupying
his position as trustee, he would have been barred from
recovering the property by twenty years prescription
before the death of Mrs. Cowles occurred, and it has
already been shown that barring him would also bar all
the beneficiaries under the trust deed.  He, representing
them, had lost his right to recover before the time ar-
rived when the legal title would have vested in them,

and when, but for the fact that he, as their representative, had become barred, they would have had a right to sue for the property.

3. It does not appear whether, after the death of Nisbet, any other person was appointed trustee in his stead. If a successor was appointed, of course the statute of prescription would have run against him from the time of his appointment. As to the period elapsing between the death of the original trustee and the appointment of his successor, if there was one, then, even if section 2688 of the code, which provides that " a prescription does not run against an unrepresented estate until representation, provided the lapse does not exceed five years," is applicable to a case of this kind, the running of the statute would not, under the ruling of this court in *Payne* v. *Ormond et al.*, 44 *Ga.* 514, have been suspended if the vacancy exceeded five years. The record discloses nothing whatever with regard to this matter, and we are quite sure that the plaintiffs would not be entitled to claim the benefit of any such suspension without affirmatively showing that a successor to Nisbet was actually appointed within five years from the date of his death. They having failed to show the appointment of a successor within that time, there is nothing before the court which would enable us to say that the running of the statute of prescription was ever suspended at all.

4. After the judge had announced his intention to grant a nonsuit, but before the necessary order had been signed or entered upon the minutes, plaintiffs asked leave to introduce further evidence to avert the nonsuit. The court inquired of plaintiffs' counsel if they knew of this evidence before they announced closed, and upon receiving the answer that they did, refused to permit the evidence to be introduced. This court has repeatedly ruled that it is discretionary with the presiding

judge whether or not he will reopen a case for the reception of additional evidence after both sides have announced closed.  Certainly, under the above state of facts, we would be going a great length to hold that the court abused its discretion in the present case.  There was nothing to prevent plaintiffs' counsel from putting in the additional evidence at the proper time.  For reasons of their own, they chose not to do so.  They had closed; the motion for a nonsuit had been made and argued, and the judge had announced his intention to grant the same.  To have allowed further evidence would have consumed more time, and doubtless would have required more argument.  Under the circumstances, the plaintiffs were not entitled, as matter of right, to introduce the proposed evidence at this late stage of the proceedings, and we will leave the matter as it stands.

5. It was ruled in *Wooten & Co.* v. *Nall*, 18 *Ga.* 609, that the production of papers upon notice, and the inspection of them by the party calling for the same, would make them evidence for both parties, not only at the trial when they were produced, but upon all subsequent trials of the same case.  In our opinion, however, the production of such writings will not suffice to make them evidence for the producing party on the trial of another and entirely different case, though brought by the same plaintiffs against the same defendants, and for the same cause of action.  Although the parties and the subject-matter in the present case are the same as in the former case to which reference has already been made, the two cases are, nevertheless, entirely separate and distinct actions.  It would not be contended that a witness subpœnaed in the former case would, after a nonsuit had been granted in that case and it had gone out of court, be required, under the same subpœna, to attend the trial of the case which was subsequently brought.  The matter with which we are now dealing rests upon the same principle.     *Judgment affirmed.*