Jones *et al.* *v.* Rountree *et al.*

1. Under the code and the practice prevailing in this State, an entry
of service upon a bill of exceptions made and signed officially by
a deputy-sheriff, is sufficient evidence of service by a proper officer;
and the truth of such entry cannot, in the Supreme Court, be trav-
ersed upon a motion to dismiss the writ of error, there being no
provision of law for the hearing and determination in this court
of an issue thus made.

2. The words " new county," as used in section 34 of the code, pro-
viding in what manner the jurisdiction of an administration upon
an estate may be changed from an "old" to a "new" county,
were not intended to apply to any county existing at the time that
section took effect, which was the 1st day of January, 1863, but
to those counties only which might thereafter be laid out and or-
ganized. The law applicable to the removal of an administration
from one county to another, both of which were in existence on
that day, was the act of 1812 (Cobb's Dig. 318), as explained by
the act of 1856 (Acts of 1855-6, p. 152). Code, §§2611–2613.

3. Although a sale of land by an administrator may, for want of ju-
risdiction in the court of ordinary granting leave to sell, or for any
other reason, have been utterly void, yet where such administra-
tor was himself indirectly the purchaser at the sale, and thereafter
continuously held possession of the land, using it as his own, for a
period of about twenty-five years, the last twenty of which elapsed
after one of the heirs of the estate had become of age; and sub-
sequently, upon a bill filed by this heir against the administrator,
a consent decree was rendered, by the terms of which the title to
the land was revested in the estate of the intestate, such decree
was not effective as against one who, without notice of any claim
by this heir of any interest in the land in question, had extended
credit to the administrator as an individual on the faith of the latter's
personal ownership of the property, the heir being, by his own long
continued acquiescence in such possession and use of the land by the
administrator, estopped, so far as this creditor was concerned, from
denying that the land belonged to the administrator individually.
Under these facts this creditor, after reducing his claim to judg-

ment, could maintain an equitable petition to set aside and cancel
the above mentioned decree as a cloud upon his debtor's title,
in order that his judgment might the more effectually be en-
forced by a sale of the land.

May 13, 1895.  Brought forward from the last term.

Equitable petition.  Before Judge HANSELL.  Brooks
superior court.  May term,·1894.

W. C. McCALL, by L. E. BLECKLEY, for plaintiff in
error.

GLENN & ROUNTREE and DENMARK & ASHLEY, contra.

LUMPKIN, Justice.

1. Section 355 of the code distinctly authorizes the
appointment of deputy-sheriffs, and requires these offi-
cers to give bond with sureties.  It is difficult to conceive
why deputy-sheriffs should be appointed at all, if they
are not at least competent to perform such duties per-
taining to the sheriff's office as serving papers and
making entries of such service.  It is true that in 1892
the General Assembly passed two acts amending, re-
spectively, sections 3971 and 3972 of the code, so as to
provide in terms that executions issued upon the fore-
closure of chattel mortgages should be directed to, and
levied by, not only the sheriff, but also his lawful dep-
uties.  (Acts of 1892, pp. 62, 63.)  We are unable to
see, however, that there was any necessity for the pas-
sage of these acts.  No reason now occurs to us why
the direction of an execution to a sheriff would not also
include a direction to his deputy, and authorize the latter
to levy it.  Certainly, under the practice which had
long prevailed in this State, sheriffs could lawfully per-
form the most (if not all) of their duties by and through
their regularly appointed deputies.  Accordingly, we
hold that an entry of service upon a bill of exceptions,
made and signed officially by a deputy-sheriff, is suffi-
cient evidence of legal service by a proper officer.

A motion was made to dismiss the writ of error in

the present case, for want of service of the bill of exceptions; and in this connection an effort was made to traverse the truth of the entry of service made by the deputy-sheriff. There is no law, of which we have any knowledge, authorizing an issue of this kind to be made up and tried in this court; and we therefore declined to enter upon such a trial, and as a consequence overruled the motion to dismiss.

2. In 1855 the court of ordinary of Lowndes county appointed an administrator upon the estate of an intestate who, at the time of his death, was a resident of that county. In 1858 the county of Brooks was created, a portion of its territory being taken from the county first named; and the residence of the administrator being situated in that part of Lowndes county which was transferred to Brooks county, he became a resident of the latter. The question is, whether or not, upon these facts and without more, the administrator was authorized to make his returns to the ordinary of Brooks county, and thus change the jurisdiction of the administration to that county. It was insisted that under section 34 of the code this question should be answered in the affirmative. We entertain a different view of the matter. Laws prescribe only for the future. Code, §6. The original code took effect January 1st, 1863, and all rights, obligations and duties by the then existing laws remained binding. Code, §4. Therefore, no transfer of jurisdiction from Lowndes county to Brooks county was effected by or under the section of the code first above cited, because, as has already been seen, Brooks county was created in 1858, not only before the code took effect, but only two days after its adoption was provided for by statute. If Brooks county had been created after the code went into effect, section 34 would have been applicable; but as it was created before that time, the law applicable to the removal of an administration to

that county from the county of Lowndes was the act of 1812 (Cobb's Dig. 318), as explained by the act of 1856 (Acts of 1855–6, p. 152). The provisions of these acts are now embodied in sections 2611–2613 of the present code. A decisive reason for concluding that the first code did not intend to treat Brooks as a new county, is derived from the fact that the name of this county is found in section 30 of that code as an existing or "old" county. The new counties contemplated in subsequent sections were such as might afterwards be formed from the territory of the old counties. This is manifest from the language of these sections. If, under the original code, it was proper to treat Brooks as a new county, no good reason can be suggested why most of the other counties named with it in section 30 should not have been also thus treated, for a large majority of them were laid out from counties previously formed. For instance, Baker was taken from Early, Butts from Henry and Monroe, Clarke from Jackson, Cobb from Cherokee, Columbia from Richmond, and so on. Lowndes itself was laid out from Irwin.

3. The order of sale granted to the administrator was a mere nullity for want of jurisdiction in the court of ordinary granting it, and perhaps for other reasons suggested in the record; but nevertheless, under the peculiar and special facts of this case—the material portions of which are briefly summarized in the third head-note, we are of the opinion that the plaintiffs below were entitled to maintain their equitable petition for the purposes stated. It is quite true that the rule that a voidable sale by an administrator must be repudiated within a reasonable time (generally, as settled by the latest cases, within seven years), does not apply; but we think, in view of all the evidence, that the acquiescence by the heir in the possession held by the administrator ostensibly in his own right was not, as contended, accounted for

and explained upon the idea that this was mere indulgence by a son to his mother and her second husband, who was the administrator. On the contrary, in view of the evidence as a whole, we think the conduct of this heir, extending over a period of more than twenty years after he became of age, amounted to such an admission on his part that the administrator was the real owner of the land, as to estop the heir from asserting the contrary to the prejudice of the complaining creditor. Of course, the consent decree rendered in the equitable proceeding between the heir and the administrator, to which the creditor was not a party, amounted to nothing as against the latter, and could not in any manner interfere with the assertion by him of his rights in the premises.

*Judgment affirmed.*