## JONES *v.* ROUNTREE *et al.*

On August 7, 1856, Martha Hunter and William Jones entered into an antenuptial contract, and on the same day were married. The terms of the contract were, that, "in consideration of the said intended marriage, and of one dollar," Martha conveyed to a named trustee a one-sixth interest to which she was "entitled as widow and heir of" Hardy Hunter, deceased, "upon the trusts and for the uses and purposes" to say, "to the use of the said William Jones during the joint lives of the said William Jones and Martha Hunter, his intended wife, and, after the death of either of them, then of the survivor during the term of his or her natural life; and if either of them die having no issue living by the other, then to convey said property to the survivor absolutely and forever; or if the issue of such marriage shall die during the lifetime of the survivor, then to the said survivor forever; and if the said William Jones and Martha Hunter shall both die leaving issue of the said marriage, then in trust to convey said separate property to the said issue living at the time of the death of the survivor of them, share and share alike." *Held,* that under a proper construction:

1. This instrument created a life-estate for William Jones during the joint lives of him and Martha, and several contingent estates, among them one to Martha Jones for life after the death of William, and another to children in remainder who might be living at her death, Martha surviving William.

(a) It vested the legal title in fee in the designated trustee, and ac-

cordingly the trustee represented every possible life-estate, as well as the estate in remainder.

[(*b*) Martha having survived William, and there being children in life at the time of the death of Martha, she acquired an equitable estate for life, and at her death the surviving children acquired an equitable estate in remainder.

2. The evidence, under the agreed statement of facts, was insufficient to sustain prescriptive title as set up by the defendants.

OCTOBER 5, 1912.

Complaint for land. Before Judge Thomas. Brooks superior court. May 5, 1911.

On April 7, 1909, M. F. Jones instituted an action against S. S. Rountree individually, and S. S. Rountree and D. W. Rountree as executors of the last will and testament of A. J. Rountree, deceased, to recover an undivided one-eighteenth interest in certain land. The case was submitted upon an agreed statement of facts to the judge for decision without a jury. The plaintiff was one of three children of Martha and William Jones, and relied for recovery on the provisions of an antenuptial contract which, in so far as is material, is set out in the opinion. Before the marriage of William and Martha Jones, Martha was the widow of Hardy E. Hunter, deceased, and had elected to take a one-sixth interest in the estate of Hardy E. Hunter as her share of the estate. The antenuptial contract dealt with this interest in the property; and the plaintiff, being one of three children, the issue of the marriage between Martha and William Jones, who were living at the death of Martha Jones, who had survived William Jones, asserted title by virtue of such contract to one third of the one-sixth interest of Martha Jones in that portion of the estate of Hardy E. Hunter which is described in the petition. A. J. Rountree and S. S. Rountree purchased the land in dispute in 1895 at a commissioner's sale, at which the fee-simple title was sold and conveyed under order of a court of equity as the property of William Jones, to satisfy certain executions against William and Martha Jones. The purchasers immediately entered possession in good faith, and continued to maintain possession of the property openly and notoriously until the date of the institution of the suit, a term of about fifteen years. Based upon such possession under color of title, the defendants set up in their plea title by prescription as a defense to the action. The judge rendered his decision in favor of the defendants. Error was assigned upon this judgment.

*Branch & Snow,* for plaintiff.

*Denmark & Griffin,* for defendants.

ATKINSON, J. 1. If prescription ran against the plaintiff from the date of the defendants' entry, the possession in point of time and character was sufficient to authorize the judge to find that a title had been acquired by prescription. What, if anything, prevented such result? It was insisted that prescription did not begin to run against plaintiff until after the death of Martha Jones in 1907, and thereafter sufficient time did not elapse before filing the suit in 1909 for perfection of prescriptive title. The plaintiff invoked the aid of the antenuptial contract. It was executed on the 7th of August, 1856, between Martha Hunter and William Jones, who intermarried on the same day. James West was, named therein as trustee. After referring to the contemplated marriage and describing the property to be conveyed, it was further stated that Martha Hunter, "in consideration of the said intended marriage and of the premises, and of one dollar to her by the said William Jones in hand paid, the receipt whereof is hereby acknowledged, and by and with the consent and approbation of the said William Jones, testified by his signing and sealing these presents, hath granted, sold, assigned, and transferred and by these presents doth bargain, sell, assign, and transfer unto the said James West, the said party of the third part [described property], but nevertheless upon the trusts and for the uses and purposes hereinafter set forth, that is to say, to the use of the said William Jones during the joint lives of the said William Jones and Martha Hunter, his intended wife, and, after the death of either of them, then of the survivor during the term of his or her natural life; and if either of them die having no issue living by the other, then to convey said property to the survivor absolutely and forever; or if the issue of such marriage shall die during the lifetime of the survivor, then to the said survivor forever; and if the said William Jones and Martha Hunter shall both die leaving issue of the said marriage, then in trust to convey said separate property to the said issue living at the time of the death of the survivor of them, share and share alike. And the said William Jones, in consideration of the premises and of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, does hereby covenant and agree, that, said marriage being solemnized, he, the said

William Jones, will carefully and according to his best judgment husband and preserve the estate of the said Martha Hunter, which she now has, and which during the said marriage she may receive. by descent or the statute of distributions from her relations, and take and receive to his own use only the interest and increase thereof during the natural life of the said Martha Hunter, and, him her surviving, an absolute title subject to the conditions hereinabove set forth." The whole property was conveyed to the trustee upon certain uses and trusts. These were, first to William Jones during the joint lives of himself and Martha; second, to the survivor of them for life from the death of the other; third, to the survivor in fee, if no children were born the issue of such marriage, or there being issue such issue should have died during the life of such survivor; fourth and lastly, to such persons, issue of such marriage, as might be living at the time of the death of such survivor. Thus, it will be seen, several contingencies entered into the final disposition of the property. The only certain estate was that in favor of William Jones for the joint lives of himself and Martha. All of the other estates were contingent. It was intended that the trustee should hold the legal title in order to dispose of it in conformity with the contract. That part of the contract which referred to the last contingency was: "and if the said William Jones and Martha Hunter shall both die leaving issue of the said marriage, *then in trust* to convey said separate property to the said issue living at the time of the death of the survivor of them, *share and share alike."* This manifests the intention that if there should be children left surviving both William and Martha, the trust should not end with the death of the survivor, but thereafter the trustee should make division of it between the children, and convey the property to them in severalty. This would involve holding the property until the last taker could be ascertained. The use of the words "to convey" and "share and share alike," employed as appears from the above excerpts, indicates the intention that there should be distribution among the children, and also conveyances to them by the trustee.

Under this construction there were, among others, contingencies by which Martha Jones might have an equitable estate for life only, or an absolute estate. As she survived William, she acquired an equitable life-estate, but as children, issue of the marriage, sur-

vived her, she never acquired equitable title to the fee. There was provision for an equitable estate in fee for children, contingent upon their surviving both William and Martha. There were children, and only on the death of Martha could it be ascertained who would take the fee. She might have survived all of them, or there might have been one or more surviving her. At her death it devolved upon the trustee to ascertain the surviving children, make distribution, and "convey" the property to them in severalty. Under these circumstances the trust remained executory at least until the death of Martha Jones in 1907. *Cushman* v. *Coleman, 92 Ga. 772* (19 S. E. 46) ; *Cunningham* v. *Calhoun, 135 Ga. 715* (70 S. E. 574).

2. Under the agreed statement of facts, William Jones died in 1896, and Martha in 1907. The suit was instituted in 1909. According to the record in a former case in this court, which was referred to in the agreed statement of facts (*Jones* v. *Rountree, 96 Ga. 230, 23 S. E. 311*), it appears that certain executions were held by A. J. Rountree and S. S. Rountree, some of them being against William Jones individually, some against Martha Jones individually, and others against them jointly, which for alleged reasons had not been enforced; and in order to enforce their payment by sale of a certain plantation, including the property described in the present suit, in which it is sought to recover an undivided one-eighteenth interest, A. J. and S. S. Rountree instituted a suit in equity against William and Martha Jones and others. As a result of that suit, in order to pay the executions a decree was rendered ordering a sale of the property by a commissioner. In pursuance of the decree a sale was made by the commissioner, at which A. J. and S. S. Rountree became the purchasers in 1895. The deed to them recited the decree and the sale, and declared that the property was sold "as the property of William Jones." However, A. J. and S. S. Rountree, having by their suit concluded both William and Martha Jones, subjecting their interest in the property to the payment of debts due by them, and becoming purchasers at the commissioner's sale, where the property was not ordered to be sold specifically as that of William and Martha, but merely to be sold with direction to pay the debts and apply any balance, are to be regarded as holding under the title of both William and Martha. Under such circumstances, the possession of

the Rountrees under the commissioner's deed was by force of the interest of William and Martha Jones, and in no sense hostile to them. Under the doctrine of *Lamar* v. *Pearre, 82 Ga.* 354 (3), 363 (9 S. E. 1043, 14 Am. St. R. 168), a trustee could not have recovered against A. J. and S. S. Rountree at any time during the life of either William or Martha Jones. On its facts the case is distinguishable from *Cushman* v. *Coleman,* supra, where the prescription set up was not under color of title, but based merely on 20 years possession, and not under a life-tenant or his privy in estate. Inasmuch as sufficient time did not intervene between the death of Martha Jones and the institution of the suit for the perfection of. prescription by seven years possession under color of title, the facts relied on to show prescription were not sufficient for that purpose.

(*a*) The majority of the court are further of this opinion: If a trustee of an executory trust held the entire title, covering both the uses for life and those in contingent remainder, and if prescription ripened against him, it would be good against all the beneficiaries represented by him. If it began to ripen in his lifetime, under the ruling in *Cushman* v. *Coleman,* supra, his death alone would not suspend its operation, unless for some reason expressly declared by law. But that decision did not change the general rule, that if there is no person in life against whom prescription can commence to run, it can not be begun and ripened against a dead trustee so as to affect a beneficiary in contingent remainder, with no right of entry, possession, or recovery of possession during the continuance of the life-estate; and the provision of Civil ·Code § 4175, as to prescription against an estate of a decedent on which no representation is had in five years, does not apply to the death of a trustee without a successor in. the trust.

(*b*) Mr. Justice Hill and the writer do not concur in all that is expressed in subparagraph (*a*) above. In our opinion, prescription operates against legal title. When legal title in fee becomes vested in a trustee by a valid contract, it does not afterwards become divested by the death of the trustee, but such title remains as in any unrepresented estate. Civil Code § 4175 applies to such cases. Where by application of that provision of the code a prescriptive title would arise, it would not fail merely be-

cause the possession of the prescriber commenced after, rather than before, the death of the trustee.

Under the facts appearing in the record, the judge erred in rendering judgment for the defendants. .

*Judgment reversed. All the Justices concur.*