### AYER *et al. v.* CHAPMAN.

1. Tax fi. fas. against the estate of O. and against O., issued after her death, were void, and a sale of the property under such fi. fas., though it had formerly been the property of O., was also void, and a deed executed by the sheriff in pursuance of the sale could not operate to convey title to the purchaser.
2. Where one named in a will as trustee for a life-tenant and remaindermen fails to accept the trust and to qualify, there is a vacancy in the trusteeship, and during such vacancy prescription does not run in favor of one in possession of the trust property, as against the remaindermen, until the death of the life-tenant. The provision of the Civil Code, § 4175, as to prescription against the estate of a decedent on which no representation is had in five years, does not apply to trust estates.
3. Applying the foregoing rulings to the facts of this case, a verdict for the defendant was unauthorized.

MARCH 1, 1917.

Complaint for land. Before Judge Hammond. Richmond superior court. January 19, 1916.

This was an action to recover land in the City of Augusta, which was devised under the will of Miss Olivia M. Oliver, probated in 1868. The property was levied upon and sold at city sheriff's sale on November 5, 1889, under sundry city tax executions for taxes accruing many years after the death of Miss Oliver. The fi. fas. were issued by the clerk of the City Council of Augusta against "the estate of Mrs. O. Oliver" and against "Mrs. O. Oliver," and the property was bought at the tax sale on the first Tuesday in November, 1889, by Charles G. Houston, the highest bidder, for $130. Charles G. Houston went into possession of the property twelve months after his purchase, made numerous repairs and im-

provements, put his tenants in possession, and died in April, 1891. His father, Alexander R. Houston, duly administered upon his estate, and on November 2, 1891, obtained from the court of ordinary of Richmond county an order authorizing a sale of the property in question, and immediately advertised and sold it at public outcry on the first Tuesday in December, 1891, when Miss Catherine J. Houston bought the property, obtained from A. R. Houston, administrator, an administrator's deed thereto, and immediately went into possession through her tenants. On April 7, 1892, Miss Catherine J. Houston conveyed an undivided half interest in the property to Mrs. Mamie F. Houston, and these two were in possession through their tenants until March 26, 1895, at which time Mrs. Mamie F. Houston sold her undivided half interest to Mrs. Elizabeth S. Houston, and from that date Mrs. Elizabeth S. Houston and Mrs. Catherine F. Fisher (formerly Houston) continuously occupied the property through their tenants until September 25, 1903, when they sold it to Thomas L. Chapman, the defendant, who went into possession and has occupied the premises up to the present time. The persons just mentioned made numerous repairs and improvements upon the premises, expending considerable money.

The plaintiffs claim under the will of Miss Olivia M. Oliver, the material portions of which are as follows:

"Item 1. I devise and bequeath unto my nephew, Walter J. Brookes, as trustee, and in trust for the sole and separate use, benefit, and behoof of his sister, Julia Euphemia Brookes, and her children, should she marry and have any, for and during her natural life, with remainder at her death to her child or children, and equally between them if more than one, all those several lots or parcels of land" (described).

"Item 2. From the income by rent of said lots I devise and bequeath to Mrs. Caroline Oliver, wife of my nephew, James B. Oliver, and to William R. Oliver, son of William B. Oliver, the sum of one thousand dollars each; to be raised and paid from the said rents and incomes of said lots, but the property not to be sold to meet these bequests; and provided further, that if my said neice, Julia Euphemia Brookes, should die without having child or children surviving her, the property to descend to and become a trust estate upon Virginia Air [Ayer] and children, and Joseph E.

[Josephine] Wood and children, under the same trusts and subject to the same charges and restrictions as heretofore. held by the trustees for the said Julia Euphemia Brookes during her life."

There was evidence that Mrs. Julia Graham, formerly Julia Euphemia Brookes, died on September 22, 1909. Walter J. Brookes and James B. Oliver were named as executors of Miss Oliver's will. The record of its probate in the court of ordinary showed that the named executors (who were non-residents of Georgia) did not qualify, and that Julia E. Brookes (afterwards Graham) was appointed administratrix with the will annexed on May 12, 1868. The records in the ordinary's office showed no further act of administration upon the estate. C. K. Ayer, one of the plaintiffs, testified that he knew Walter J. Brookes, the trustee named in the will, and never heard of his doing any act as trustee under the will, and that he died in 1868. Counsel for plaintiffs testified that he had examined the records in the ordinary's office from 1868, and also in the clerk's office, covering a period of about 16 years, and found no record that Walter J. Brookes had ever qualified as trustee under the will or accepted the trust, or acted as trustee. There was no conflict in the testimony as to the continuous, open, and adverse occupation of the premises by ·C. G. Houston and those claiming under him, including the defendant, from November, 1890, up to the filing of the present suit, June 21, 1911. There was no question as to the regularity of the levy, advertisement, and other formalities required by law in the tax sale on the first Tuesday in November, 1889, other than the attack on the tax fi. fas. themselves as having been issued improperly against the estate of Olivia Oliver instead of against the property itself, or against the owner. It affirmatively appeared that all the plaintiffs had been 21 years of age for more than seven years before this suit was brought, and that the youngest, Mrs. Fleming, at the time of the first trial was 35 years old.

The court directed a verdict for the defendant. A motion for new trial was overruled and the plaintiffs excepted.

*William H. Fleming,* for plaintiffs.

*Garlington & Cozart* and *Callaway & Howard,* for defendant.

BECK, J. (After stating the foregoing facts.) We are of the opinion that the court erred in directing a verdict for the defendant. The tax fi. fas., under which the property in question was

levied upon and sold at city sheriff's sale on November 5, 1889, were void. These fi. fas. were issued out of the office of the clerk of the City Council of Augusta, in favor of the City of Augusta, for city taxes. The fi. fas. for the years 1886 and 1887 were against "Est. of Mrs. O. Oliver;" for the years 1888 and 1889 against "Mrs. O. Oliver;" and the special tax fi. fa. for the year 1888 was against "Est. of Mrs. O. Oliver." Miss Olivia Oliver died prior to March 26, 1868. The deed from the sheriff of the City of Augusta to C. B. Houston, dated November 5, 1889, conveying the property, recited that the sale was made under the levy of tax fi. fas. issued out of the clerk's office of the City of Augusta in favor of the City of Augusta against "Est. of Mrs. O. Oliver," said deed having the original fi. fas. attached. These tax fi. fas. were void (*Miller* v. *Brooks*, 120 *Ga*. 232, 47 S. E. 646), and the deed executed by the sheriff of the City of Augusta in pursuance of a sale under the fi. fas. did not convey title to the purchaser. But whether the deed was good as a color of title, it is not necessary to decide. For, conceding that the deed was color of title, it was necessary for the defendant, in order to defeat the plaintiffs in this case, to have acquired a good prescriptive title through the occupancy by himself and his predecessors in title of the premises in dispute for the prescriptive period after the right to have possession of the property had accrued to the plaintiffs or some one representing them; and under the facts of the case no such adverse possession of the defendant and his predecessors in title as against the plaintiffs was shown. Whether or not Walter J. Brookes, who died in 1886, was by the terms of the will made trustee for the remainders created by the first and second items of the will of Miss Olivia Oliver, it is shown by uncontradicted evidence that he never accepted the trust and was never in a position to represent either the life-tenant or the remaindermen. Up to the time of the death of Miss Julia Euphemia Brookes (afterwards Graham) in 1909, there was no one clothed with the legal title to the remainder estate, but the trusteeship was vacant. Consequently prescription did not begin to run against the remaindermen until 1909, and the prescriptive period necessary to the maturity of a title by prescription, where land is held under a color of title, had not elapsed before suit was brought for the recovery of the land in controversy. The provision of the Civil Code, § 4175,

as to prescription against the estate of a decedent on which no representation is had in five years, does not apply to trust estates. *Jones* v. *Rountree,* 138 *Ga.* 757 (76 S. E. 55). It follows from what has been said that the verdict in favor of the defendant, which was rendered under the direction of the court, was not authorized and must be set aside.

*Judgment reversed. Fish, C. J., absent. Evans and Gilbert, JJ., concur; Atkinson and Hill, JJ., dissent.*

ATKINSON and HILL, JJ., dissenting. As declared in the Civil Code, § 4163: "Title by prescription is the right which a possessor acquires to property by reason of the continuance of his possession for a period of time fixed by the laws." In § 4168 it is declared: "Actual adverse possession of lands by itself, for twenty years, shall give good title by prescription against every one, except the State, or persons laboring under the disabilities hereinafter specified." In § 4169 it is declared: "Adverse possession of lands, under written evidence of title, for seven years, shall give a like title by prescription. But if such written title be forged or fraudulent, and notice thereof be brought home to the claimant before or at the time of the commencement of his possession, no prescription can be based thereon." It will be perceived that the prescription referred to in the foregoing provisions operates in favor of the prescriber, the manifest purpose of which is security and settlement of title to land as against the world, except the State and "persons laboring under the disabilities hereinafter specified." The exceptions just mentioned are all included in the following provisions of the Code: § 4173 declares: "No precription works against the rights of a minor during infancy, of a person imprisoned during his confinement, or of an insane person so long as the insanity continues; but each of these shall have a like number of years, after the disability is removed, to assert his claim to realty or personalty against the person prescribing." § 4175 declares: "A prescription does not run against an unrepresented estate until representation, provided the lapse does not exceed five years; nor against a joint title which can not be severally enforced, and a portion of the owners labor under either of the foregoing disabilities; nor in cases of fraud debarring or deterring the other party from his action until the fraud is discovered; nor against a party who commences his action in time, but is non-

suited, or dismisses for one time, and recommences within six months." One of the fundamental essentials of a prescription under either § 4168 or § 4169 is that the possession must be adverse. Where estates for life (§ 3663) and estates in remainder (§ 3674) are created by the same grant in the same land in favor of different persons, the possession of the life-tenant is not adverse to the estate in remainder; accordingly in such cases prescription will not run against the remaindermen, based on the possession of the life-tenant or his privy in estate, during the term of the life-tenant. Under application of this principle, numerous cases are to be found which rule that prescription does not begin to run against remaindermen until the death of the life-tenant. But if the grant creates several estates, as indicated above, in the same property, and the legal title to the land in fee simple by the terms of the grant is placed in a trustee for the purpose of holding title and securing the property to the life-tenant, and also for the remaindermen, and the trust be in all respects legal, valid, and executory, not only as to the life-tenant but as to the remaindermen, possession by a third person under a claim of right, which is hostile to the title of the trustee, will be adverse to the trustee and to the several estates included in the grant; and if the prescriber maintains his possession in all other respects as contemplated by the statute for the requisite period, he will acquire a good prescriptive title against the trustee; also against beneficiaries whose estates are represented by the trustee. *Ford* v. *Cook*, *73 Ga.* 215. In the Civil Code, § 3781, it is declared: "A trust shall never fail for the want of a trustee." The majority are of the opinion that Civil Code § 4175 has no application to this case; in which, however, the writers do not concur. See *Jones* v. *Rountree*, 138 *Ga.* 757 (76 S. E. 55). But as prescription, under the Civil Code, §§ 4168, 4169, runs in favor of the prescriber against the world, except as against the State and the exceptions in § 4173 and § 4175, if the exception in the latter section referring to unrepresented estates does not apply there is nothing to save the legal title vested in the unrepresented estate from the effects of the prescription; if it applies, the exception mentioned, by its own terms, does nothing more than allow, under specified circumstances, tolling of the prescriptive period by deducting five years from the possession of the prescriber. Referring to this section it was said, in *Cushman* v. *Coleman*, 92 *Ga.* 772

(19 S. E. 46): "It does not appear whether, after the death of Nisbet, any other person was appointed trustee in his stead. If a successor was appointed, of course the statute of prescription would have run against him from the time of his appointment. As to the period elapsing between the death of the original trustee and the appointment of his successor, if there was one, then, even if section 2688 [Civil Code of 1910, § 4175] of the code, which provides that 'a prescription does not run against an unrepresented estate until representation, provided the lapse does not exceed five years,' is applicable to a case of this kind, the running of the statute would not, under the ruling of this court in *Payne* v. *Ormond,* 44 *Ga.* 514, have been suspended if the vacancy exceeded five years. The record discloses nothing whatever with regard to this matter, and we are quite sure that the plaintiffs would not be entitled to claim the benefit of any such suspension without affirmatively showing that a successor to Nisbet was actually appointed within five years from the date of his death. They having failed to show the appointment of a successor within that time, there is nothing before the court which would enable us to say that the running of the statute of prescription was ever suspended at all."

The tax deed involved in the case for decision, though void, was sufficient as color of title. The will, properly construed in its entirety, created a valid trust estate which comprehended legal title to the land in fee simple, thus embracing the interests of the plaintiffs. The estate did not fail for the want of a trustee. The title of the defendant and his predecessors was not privy to the life-tenants, but was hostile to the whole trust estate, and their possession was adverse to that estate for nineteen years before institution of the suit. The uncontradicted evidence established a prescriptive title in the defendant, and there was no error in directing a verdict in his favor.